MARCEL CONRAD, Claimant, Appellee, v. MIDWEST COAL COMPANY et al., Defendants; PIONEER NATIONAL CASUALTY COMPANY, Defendant, Appellant.

No. 45791.

NOVEMBER 18, 1941.

OPINION MODIFIED AND REHEARING DENIED MAY 5, 1942.

Mabry & Pabst, for appellee.

Miller, Huebner & Miller, for appellant.

WENNERSTRUM, J.—This appeal has developed by reason of an action commenced before the industrial commissioner by the claimant-appellee to recover workmen's compensation against his employer and the defendant-appellant insurance company, the Pioneer National Casualty Company. Claimant

was injured in an automobile accident on September 9, 1937, while engaged, as he claims, in duties attendant to his employment. As a result of the injuries sustained it became necessary to amputate his left arm. Upon submission of the claim before the deputy industrial commissioner that official made an award in favor of the claimant. This decision was confirmed and approved by the industrial commissioner on review, with the exception that the deputy's ruling was modified on the issue as to who were the interested partners. A further appeal was taken to the district court where the industrial commissioner's holding was confirmed generally and judgment rendered in keeping with the award made. The Pioneer Casualty Company has appealed to this court.

The appellant insurance company has raised numerous questions on this appeal asserting: That there had been a change in the personnel that made up the partnership, termed the Midwest Coal Company, after the policy involved in this action had been written; that the policy was not applicable to the claimant in that he had not taken any affirmative action as is claimed was necessary to come under its terms; and that the premium had not been paid as provided by the contract of insurance, and the policy had therefore lapsed.

The appellant, in its brief and argument, now concedes that the injuries for which award has been made arose out of and in the course of claimant's employment. By reason of this concession no further comment concerning the extent of the injuries or the manner in which they were received is necessary. However, it is the appellant's contention that the claimant-appellee, and his injuries, were not covered by the policy issued by the appellant. By reason of this contention it is necessary that, as briefly as possible, we review the terms and conditions of the insurance agreement, and the facts pertaining to its issuance, and the matter of payment of the premium claimed to be due on the policy at the time of the claimant's injury.

According to the policy issued, the Pioneer National Casualty Company is a legal reserve mutual insurance company. The initial arrangements between the Midwest Coal Company and the insurance company commenced on August 12, 1937,

at which ·time the coal company, by one of its partners, signed an application termed: "Declarations for Workman's Accident Insurance." This declaration provided that "The term of the policy shall be from ·Aug. 12, 1937 to Sept. 1, 1937, at twelve and one minute o'clock A. M., Central Standard Time, as to each of said dates." A further provision in the "declarations for workman's accident insurance" which the coal company signed was as follows:

"Permission is hereby given the Pioneer National Casualty Company to examine the books of this Employer during the term of the policy and any renewal thereof and within one year after its final termination so far as they relate to the remuneration earned by any person working for this Employer while the Policy is in force. The maximum contingent liability of the Employer under the policy shall be an additional amount equal to the premium for the term for which the policy is written. It is agreed and understood that the policy is issued in consideration of the statements made herein, which are represented by the Employer to be true and correct. It is further agreed and understood that the insurance herein applied for shall not be binding until this application has been approved by the Company and the policy issued. The Employer hereby agrees to the terms of the policy when and if issued."

The policy which was issued on August 13, 1937, although designated as "workman's accident insurance", purported to insure "each person named in the attached list of those who have entered into a Compensation Agreement with the employer hereinafter named,. in the form hereinafter set out, and such other persons as shall hereafter enter into such ·Compensation Agreement with said employer, as follows: * * *"

Further provisions of the policy are· hereafter set forth. An endorsement attached to the policy struck out paragraphs 1, 2, and 3 and substituted in lieu thereof the following:

"As to each person, the insurance hereunder shall begin upon the issuance of this policy, the payment by the employer of the deposit premium specified in the Declarations, and such execution of said Compensation Agreement.

"4. The insurance hereunder shall apply only to personal injuries sustained while such person is insured under this policy or a renewal or extension thereof and which arise out of and in the course of such person's employment as an employee of said employer within the meaning of the Iowa Workmen's Compensation Law.

"5. For and on account of any and all personal injuries thus sustained, the Company agrees as follows:

"(a) To promptly pay to any person who would be entitled thereto under the Iowa Workmen's Compensation Law an amount equal to and in accordance with the terms, conditions and limitations of the Iowa Workmen's Compensation Law as the same appear in Chapters 70, 71, and 72 of the Code of Iowa with Amendments thereto.

"(b) To furnish necessary and reasonable surgical, medical and hospital services and supplies therefor in accordance with the terms, conditions and limitations of said Workmen's Compensation Law.

"(c) In case of death resulting from such injury, to pay the reasonable expense of burial of such employee in accordance with the terms, conditions and limitations of said Workmen's Compensation Law."

The policy further provides that it shall be subject to certain conditions, a portion of these being hereinafter set out:

"Section I. The Iowa Industrial Commissioner having approved the plan of insurance herein provided, it is agreed that as respects said employer's obligation to carry insurance for and to provide, secure and pay compensation according to the provisions of said Workmen's Compensation Law for personal injuries sustained by such employee arising out of and in the course of the aforesaid employment, the insurance provided in this policy shall be and is a substitute for and in lieu of any other form or plan of insurance provided for in said Workmen's Compensation Law. Otherwise all of the provisions of said Workmen's Compensation Law applicable to employees and employers who have not rejected the same or who have waived such rejection shall be and remain a part of this policy as fully and completely as if written herein. And all of the rights and defenses which such an employer has under said Workmen's

Compensation Law are hereby vested in and reserved unto the Company. Nothing herein contained shall operate to so extend this policy as to impose upon the Company liability for any injury or death that would not be compensable under said Workmen's Compensation Law.

"Section II. * * *.

"Section III. Jurisdiction of Commissioner and Definitions of Terms. It is agreed that the Iowa Industrial Commissioner shall have jurisdiction to hear and determine any and all controversies arising under and within this policy and out of injuries covered thereby in the same manner and to the same extent as in controversies arising out of injuries covered by other forms of policies provided for and permitted by said Workmen's Compensation Law. It is also agreed that whenever and wherever terms are used herein that are defined in said Workmen's Compensation Law, the same are used in this policy in the same sense and with the same meaning as such terms are used and defined in said Workmen's Compensation Law.

"Section IV. What Constitutes Policy. * * *.

"Section V. Premium Basis. * * *.

"Section VI. Cancellation. This policy may be cancelled at any time by the employer upon written notice to the Company stating when thereafter cancellation shall be effective; or by the Company upon written notice to the employer stating when, not less than ten days thereafter, cancellation shall be effective. The effective date of such cancellation shall then be the end of the policy term. In the even[t] of such cancellation, the remuneration to the end of such policy term of all persons working for said employer shall be exhibited to the Company and the earned premium thereon shall be computed, as provided in Section V of this policy. If the earned premium thus computed is greater than the deposit premium paid, the employer shall immediately pay the additional amount to the Company, if less the Company shall return to the employer the unearned portion of such deposit premium. Notice of cancellation mailed by first-class mail to the employer at the address herein given, shall be sufficient notice, and the check of the Company, similarly mailed, shall be sufficient tender of any unearned premium.

"Section VII. Said employer agrees that at the effective

date of this policy he is bound by and operating under the compensatory provisions of said Workmen's Compensation Law and will not give notice of his election to reject the same during the term of the policy or any renewal or extension thereof.

"Section VIII. Inspection and Audit. * * *.

"Section IX. Employer's Knowledge or Notice of Injury. * * *.

"Section X. Notice of Injuries and Claims. * * *.

"Section XI. Assignment. * * *.

"Section XII. Subrogation. * * *.

"Section XIII. Maximum Contingent Liability. * * *.

"Section XIV. Dividends. * * *.

"Section XV. Policyholders' Voting Rights. * * *."

The compensation agreement printed on the back of the policy, and which under its terms, it is anticipated the employee will sign in order to be covered by the policy, is as follows:

"It is agreed by and between the undersigned employer and employee or employees of said employer that as respects said employer's liability to carry insurance for and to provide, secure and pay compensation according to the provisions of the Iowa Workmen's Compensation Law for personal injuries sustained by such employees arising out of and in the course of their employment by said employer, the compensation, benefits and insurance provided in the Workman's Accident Policy, which said employer has caused to be issued by the PIONEER NATIONAL CASUALTY COMPANY of Des Moines, Iowa, shall be and are a substitute for and in lieu of any other compensation, benefits or insurance provided for in said Workmen's Compensation Law, during the term of said policy and any renewal or extension thereof."

■ I. One of the contentions of the appellant is that there was a change in the personnel of the partnership after the policy was written and that one Keith Jennings was a partner at the time of the accident. It appears from the evidence that Jennings had lent money to one Mitchell and one Cowen to cover a loan made to them so that they might buy out other partners. It also appears that at that time a chattel mortgage was given, and in connection with this loan and as additional

security an assignment of interest in the partnership and the partnership property from one of the original partners was prepared. This assignment was in favor of Jennings. Jennings testified that he never saw the assignment of interest until the time of the original arbitration hearing and knew nothing about it.

The industrial commissioner held that the claimant had failed to sustain the burden of proof relative to Jennings being a member of the partnership. He further held that Jennings did not have an interest in the partnership property except as a holder of a mortgage lien. The commissioner concluded that there could not be any liability as against Jennings and for that reason dismissed the claimant's case against him. We are of the opinion that the commissioner was correct in his holdings. These holdings, as affect the claimant, also dispose of the appellant's contention regarding the claim that the names of the partners had not been properly set out in the initial agreement between the partnership and the insurance company.

II. It is noted on page one of the policy that this company had been organized as a legal reserve mutual company. The printing of this statement is in conformity with the provisions of section 8901 of the Code wherein it is required that the nature of the company must be noted on the policy, that is, whether a mutual company or a stock company. Inasmuch as the policy had been issued by a mutual company, the company itself, and this policy are subject to the provisions of chapter 404 of the Code of Iowa, which chapter relates to insurance other than life. Section 8940, which is a part of the last-referred-to chapter, designates the kind of insurance that any company authorized to do business under this chapter may issue. In this connection reference is here made to subsections 5a and 5d of section 8940, which are as follows:

"8940 5. a. Insure the health of persons and against personal injuries, disablement, or death resulting from traveling or general accidents by land or water.

"5. d. Insure employers against loss in consequence of accidents or casualties of any kind to employees, including workmen's compensation, or other persons, or to property resulting from any act of an employee, or any accident or casualty to

persons or property, or both, occurring in or connected with the transaction of their business, or from the operation of any machinery connected therewith.''

It is our judgment and conclusion, after a careful study of the terms of the policy, the greater portion of which is incorporated in this opinion, that it cannot be termed an accident policy. What was apparently endeavored to be issued was a policy that would give the industrial commissioner jurisdiction to pass upon controversial matters that might develop as the result of claims made by employees of the insured but which would not be effective unless the employee had taken some action relative to accepting the provisions of the policy. We do not and cannot approve of this type of protection for industrial workers and especially do we hold that such type of protection is not contemplated under the workmen's compensation law.

III. It is the contention of the appellant that the policy was written solely for the period between August 12, 1937, and September 1, 1937. However, attention is called to the provisions of section V of the policy, which are as follows:

''Premium Basis. The premium for this policy shall be based upon the entire gross remuneration earned by all persons while working for said employer in the term of this policy and the basis of the premium for each renewal and/or extension of this policy shall be the entire gross remuneration earned by all persons while working for said employer in the term of such renewal and/or extension. At the end of the policy term and at the end of each term for which this policy shall hereafter be extended or renewed, the actual amount of the gross earnings forming the basis of the premium for such term shall be exhibited to the Company in writing upon forms furnished by the Company. At the end of each of said terms the premium therefor, computed on the basis herein provided at the rates specified in the Declarations, shall become due and payable. If a further renewal or extension of this policy is issued, the insurance under such further renewal or extension shall begin at the end of the last preceding term, providing the premium for such term is paid to the company at its Home Office at Des Moines, Iowa, on or before ten days after the end of such term, otherwise, the in-

surance under such further renewal or extension of this policy shall begin when payment of such premium is received by the Company at its Home Office in Des Moines, Iowa.''

Attention should also be called to the fact that by endorsement, section V .of the policy is amended by striking out the words ''in the Declarations'' as used in the third sentence of the original section V and by adding thereto as a new paragraph the following:

''The employer agrees to pay the premium upon each business operation, computed at the rates in use by the Company upon the date of issue of this Policy. *The employer agrees, on or before the 10th day of each month, to exhibit to the Company a statement of the gross earnings,* as provided in this section, for the preceding calendar month *and to pay the premium therefor,* computed upon the basis herein specified. It is understood and agreed that as to any employee who receives less than the wage scale or rate which is usual for such services in the same or neighboring localities, his earnings, for the purpose of determining the amount of premium under this Policy, shall be considered to be at the same scale or rate usual for the same or similar services in the same or neighboring localities.'' (Italics supplied.)

It is our conclusion that the amendment to section V of the policy which is to the effect that the employer agrees ''on or before the 10th day of each month * * * to pay the premium therefor, computed upon the basis herein specified,'' demonstrates that the parties contemplated a continuing policy because it contained an agreement on the part of the insured to pay the premium beyond the termination date of the policy and contemplated its receipt by the company. It will be further observed that section V provides that the renewal shall begin at the end of the preceding term if the premium is paid within ten days following the end of the preceding term, otherwise it will begin when the premium is received by the company at its home office.

The record discloses that at the time of the issuance of the policy a payment of $25 was received as a deposit premium. Section VI of the policy is set out herein, and the manner in which this deposit premium may be used is there stated.

We have heretofore held that the policy issued was a work-

men's compensation policy. The initial payment of $25 should be considered in determining the amount due under the policy and as to whether or not it should be considered to be in force and effect. In 29 Am. Jur. 351, section 415, it is stated:

"As a general rule, and subject to the exceptions hereinafter noted, if an insurer has in its hands funds presently due the insured sufficient to pay an assessment or premium upon his policy when due, it is the former's duty to apply the same so as to prevent a forfeiture of the policy; under this rule, it cannot declare the policy forfeited when at the time it is in any way indebted to the insured in an amount equal to or greater than the amount owing for the payment of the premium or assessment."

The law and the policy under consideration should be liberally interpreted so as to make the provisions of the law and the policy applicable to the claimant. In the present case the earned premium for the so-called policy term of August 12 to September 1, 1937, was computed by the company to be $16.96. This was paid on September 13, 1937. Therefore it is contended by the appellant that the renewal did not commence until September 13th leaving a gap between September 1 and September 13, 1937, despite the fact that the company retained the $16.96 as well as the deposit premium of $25. The theory under which they now seek to say that they can retain all of this money and still deny coverage between the dates of September 1 and September 13, 1937, does not coincide with our conceived theory of justice whether applied to a workmen's compensation case or otherwise. We hold that the appellant insurance company is estopped to claim that the policy was not in force and effect on September 9, 1937.

IV. It is the contention of the insurance carrier that the policy issued was a "workmen's accident policy" and not a workmen's compensation policy. In this connection we might state that it is our conclusion that the efforts of the insurance company to issue a policy that would come within the provisions of sections 1471 and 1472 of the Code were not successful in the present case. These sections provide for insurance that "shall in no instance provide less than the benefits provided

and secured.'' It is apparent that the policy provides for insurance or coverage only on some affirmative action on the part of the employee. We hold, as did the industrial commissioner, that this section contemplated the adopting of a plan for benefits agreed upon by the employer and employee and that they could not be adopted as a substitute for workmen's compensation. In that respect it provided for benefits less than that provided for under the workmen's compensation law. This law was adopted by our legislature as a means of avoiding lengthy litigation that might grow out of industrial accidents. They did not contemplate that the employee would have to do anything to receive the benefits of the law. The policy as issued provided for affirmative action on the part of the employee. In all other respects it was a workmen's compensation policy.

The claimant, in the instant case, did not take any affirmative action as is contemplated under the policy. Under the workmen's compensation statute it is not necessary for an employee to take any action to become a beneficiary. Provisions of a policy cannot be substituted for the plain provisions of the statute.

Therefore it is our holding that the policy was in substance insurance for workmen's compensation and that the loss as computed by the industrial commissioner and upon which judgment was entered in the district court should be approved.

Certain affidavits have been incorporated in the abstract which had not heretofore received the consideration of the industrial commissioner. A motion has been made to strike this portion of the abstract and this motion is sustained.

By reason of our holdings and comments heretofore made, the decision of the district court is affirmed and the judgment entered is further confirmed.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.