Carl F. Laverty and Ruth F. Laverty, appellees, v. Hawkeye Security Insurance Company, appellant.

No. 51945.

(Reported in 140 N.W.2d 83)

718

Patterson & Lorentzen by Roy M. Irish, of Des Moines, for appellant.

Raymond E. Pogge, of Council Bluffs, for appellees.

SNELL, J.—This is an action at law wherein plaintiff Carl F. Laverty seeks recovery for damage to his automobile and plaintiff Ruth F. Laverty seeks recovery for medical expense from defendant insurance company. The trial court found for plaintiffs and defendant appealed. The trial court's findings of fact are binding on us if supported by substantial evidence..

Defendant says the insurance policy under which plaintiffs seek recovery had expired and there was no insurance in force.

As Mrs. Laverty's claim depends for validity on her husband's claim he will be referred to as plaintiff.

The facts abound in examples of carelessness and how not to do business. The evasiveness of defendant's witnesses adds nothing to the strength of defendant's position.

Plaintiff, a farmer, formerly lived near Minden, Iowa. He was a customer of Farmers Savings Bank, Shelby, Iowa. Thomas M. Stoker was cashier of Farmers Savings Bank and also an insurance agent representing, among other companies, Hawkeye Security Insurance Company, defendant herein. He is a graduate of an insurance training center, has studied insurance policies and is duly licensed.

For several years prior to the incidents involved herein plaintiff had bought various types of insurance from the Stoker agency. He had a five-year Hartford Fire Insurance policy from October 7, 1958, to October 7, 1963; a three-year policy from April 6, 1962, to April 6, 1965, with Freeport Insurance Company and an automobile policy with defendant Hawkeye Security Insurance Company.

For some reason not appearing in the record it was the custom of the agent or the bank to keep the policies. Plaintiff had never seen nor had physical possession of any of his policies.

In February 1963 he had a $91.91 claim against defendant-company and so knew the name of his car insurance carrier but otherwise did not even know the names of his insurance carriers. Premiums were paid by charging plaintiff's bank account with a debit slip when he happened to have sufficient money therein. The fact that this did not always coincide with the due date of the premiums apparently caused no concern to either the bank or the agent. The practice was continued for several years and was the only way the premiums were paid. Plaintiff never paid by check or cash.

As renewal certificates were sent by the insurance companies to the agent he kept them. He remitted when the net amount due the companies appeared on his monthly billing and then collected as indicated.

According to defendant's witnesses plaintiff's automobile insurance with the Stoker agency and defendant-company began on June 8, 1959. However, debit slips charged to plaintiff's bank account show that he had been charged for automobile insurance with defendant-company since June 1956. Apparently a new policy was written in June 1959. A different policy number appeared and was used thereafter. The policy limits remained the same. The policy was for one year. It was automatically renewed each year by issuing renewal certificates up to and including the year ending June 8, 1963. On July 6, 1960, the policy was amended to cover a 1960 Ford, the car involved in the present controversy.

In 1961 plaintiff moved to a farm near Elliott. On May 18, 1961, the Stoker agency executed a policy endorsement changing the address of plaintiff to Elliott, Iowa.

Some time prior to June 8, 1963, the renewal date of plaintiff's policy, defendant-company mailed a renewal certificate to the Stoker agency. Defendant's Exhibit 10 shows that the agency cancelled the certificate on May 10, 1963. Defendant's Exhibit 9 is a letter to defendant returning the certificate. The letter is dated May 31. Mr. Stoker also mailed the existing policy that

had not expired back to the company. Why Mr. Stoker would return to the company an unexpired policy paid for and belonging to plaintiff does not appear. There is no claim that plaintiff authorized or even knew of this action. The result was that even before the expiration date of plaintiff's policy defendant's agent had sent everything back to the company for cancellation.

On May 24, 1963, Mr. Stoker sent to plaintiff a letter in words and figures as follows:

"SPEED LETTER

"To   Mr. Carl Laverty          From   Farmers Savings Bank

     Elliott, Iowa                      Shelby, Iowa

Subject   ¼P   POLICY No. 7235733.

"MESSAGE

"Date   5/24/63          19

"Your policy expires 6/8/63. Please take out your insurance with an agent in your own local area as we think this would help you in claim work by having a closer agent.

"Thanks a lot Carl. Please let me know when you have done this so you won't be charged for a new policy.

"Signed   TOM STOKER."

It should be noted that the letter merely suggested a change of agents and not a change of companies.

Plaintiff testified that he received this letter and knew therefrom that some policy of insurance would expire but did not know which one. He was busy planting corn. He put the letter in his desk intending, when he got time, to go to Shelby and see Mr. Stoker about it.

From the official highway map it would appear to be over 50 miles from Elliott to Shelby. In any event plaintiff did nothing prior to June 8, 1963.

On July 10, 1963, Mrs. Laverty was driving the 1960 Ford belonging to her husband on a county road. The car struck loose gravel, went into the ditch and was damaged. Mrs. Laverty and

two children received minor injuries. The doctor bills incident thereto amounted to $70.

The next day plaintiff called on Mr. Stoker to make a claim and get a copy of his policy. Mr. Stoker told plaintiff that he had no copy of the policy, that he had returned it to the company and that the premium had not been paid when due. Plaintiff offered to pay the premium. Mr. Stoker said he could not accept the money. Plaintiff never did get a copy of his policy. The next day plaintiff transferred his insurance business to the McConnelee agency in Griswold. He bought a 1958 Ford and insured it with defendant-company through the McConnelee agency.

On July 30, 1963, plaintiff sent a check drawn on Houghton State Bank of Red Oak to Hawkeye Security Insurance Company for $36.14. The check had noted on its face "For policy no. FA7-235733 from June 8, 1963 to June 8, 1964 ½ payment."

Defendant cashed the check and kept the money.

On November 15, 1963, plaintiff sent another check on the same bank to defendant for $36.14. This check had noted on its face "For Policy No. FA7-235733 June 8, 1963 to June 8, 1964 ½ payment last half."

Defendant cashed the check and kept the money.

The policy number on the checks identified the policy issued through the Stoker agency that defendant claims expired on June 8, 1963. The exhibits (debit slips) show that from the beginning the premiums had been collected and accepted when long past due. The 1963 delinquency was no greater than customary.

Defendant, disregarding the policy identification, credited the McConnelee agency with the payments. As the credits did not correspond with any policy through the McConnelee agency defendant wrote McConnelee. Defendant's supervisor of accounting and collections testified:

"That's why we wrote. It's up to him to take care of it. Hum-hum, we will tell him what we have received. If we had given him an excess credit it actually belongs to refund to the assured. It's his duty to see that that refund is made."

No notice of the procedure was ever given to plaintiff and no refund has ever been made.

Defendant on December 26, 1963, mailed notice of cancellation of the McConnelee policy.

In spite of the fact that the defendant had all the records and plaintiff had none except debit slips and the two checks, defendant's representatives were evasive about the coverages in plaintiff's policies. They could not find the policy returned by the Stoker agency although it was "supposed to be just like the renewal certificate, clipped right onto our file if it was returned to our office."

It was finally brought out that the coverage on the 1960 Ford had been $15/30000 bodily injury liability; $5000 property damage; medical payments $1000 and comprehensive collision $50 deductible.

Defendant does not claim that any notice of any kind was ever sent or given plaintiff except the letter quoted, supra, but not even the agent who wrote the letter was sure as to what it was. He testified:

"Q. As far as your agency is concerned you never did send Mr. Laverty a notice of cancellation? The Witness: We sent him a letter telling him to take his insurance out with another agency. Whether that could be considered a notice of cancellation I don't know, and that's where I am in the fog—what we did do. * * *."

If Mr. Stoker, defendant's agent, was in a fog, defendant could hardly expect plaintiff to see clearly and understand that a custom followed for seven years was terminated.

No question has been raised as to the authority of defendant's agent. There is no question as to the custom beginning in June 1956 as to automatic renewal of policies and belated collection of premiums. Except for once in 1959 the old policy was kept in force by a renewal certificate. The letter of May 24, 1963, was not a notice of termination of the custom as to renewal. It was a request for a change for plaintiff's convenience and it clearly indicated that unless plaintiff made the change he would be charged for a renewal at the Stoker agency. There was no expression of a definite intent to cancel or terminate and not even an adequate identification of the policy. There was a policy number on the letter but neither the name of the company nor

the kind of insurance was shown. The Stoker agency had written insurance for plaintiff in three different companies but had kept the policies.

The trial court found that the "Speed Letter" from Farmers Savings Bank to plaintiff was not a notice of cancellation. We agree.

I. Defendant argues that this is not a case of cancellation but of expiration by passage of time and nonpayment of premiums. We do not agree with defendant as to the problem. This is a case depending on proof of a custom established by defendant and relied on by plaintiff. The general rule is stated in 29 A Am. Jur., Insurance, section 1092, as follows:

"Acceptance of Overdue Premiums.—It is the general rule with respect to policies requiring the periodical payment of premiums and providing for a forfeiture for failure to pay on the day named, that if the insurer customarily receives overdue premiums from the insured, and thereby induces him to believe that a forfeiture will not be incurred by a short delay in the payment of premiums, it cannot insist on a forfeiture for a delay induced by such custom. Likewise, where it is the custom between an insurance agent and the insured to have periodical settlements for original and renewal premiums on policies, the insurer cannot insist on a forfeiture for failure to pay the premium on a policy when issued. Even where there is a provision in a policy that the acceptance of a past-due premium shall not be deemed a waiver nor the establishment of a custom, the customary receipt of past-due premiums has been held to raise an estoppel."

There was evidence from which the trial court could find that there was an implied contract established by custom for the automatic renewal of plaintiff's insurance; that there was no effective termination thereof and that plaintiff had a right to rely thereon.

II. The insurance premium for the period of time in question was paid belatedly but clearly identified and the money kept by defendant. The defendant denies that the premiums for the period in question were paid by saying that it credited the payments to the McConnelee agency and that it was McConnelee's duty "to see that that refund was made."

Forrest v. Sovereign Camp, Woodmen of the World, 220 Iowa 478, 261 N.W. 802, was an action on an insurance policy. The defense was lapse for nonpayment of premium. Plaintiff claimed payment and designation as to application of payment. We held that the insured in making payment had the right to direct how the payment should be applied and defendant's agent did not have the right to apply the payment on any other indebtedness. (Loc. cit. 484, 485)

The rule is stated in 70 C. J. S., Payment, section 55, as follows:

"Where a debtor directs the manner in which his payment is to be applied, the creditor, if he accepts the payment, must apply it accordingly, the rule applying to payments by draft as well as to cash payments, and to directions to pay a part of the value received to another creditor."

In the case at bar plaintiff made two payments direct to defendant. The purpose of the payments was specifically identified on each check. Defendant cannot claim to have been misled. Defendant cashed the checks and has kept the money. The premiums having been tendered, accepted and retained for the period of time involved defendant may not now claim nonpayment.

III. At the close of all the evidence plaintiff to conform to the proof from defendant's testimony pleaded that defendant was estopped from denying coverage or denying that payment had been received.

Over defendant's vigorous objection the court allowed the amendment. Defendant claims error.

Rule 88, Rules of Civil Procedure, contemplates a reasonable allowance of amendments to conform to proof. While the issues may not be substantially changed wide discretion is vested in the trial court. Where the parties voluntarily offer evidence on an issue the denial of an amendment to conform to such proof would be beyond fair discretion. Mooney v. Nagel, 251 Iowa 1052, 1059, 103 N.W.2d 76. See also Thorne v. Reiser, 245 Iowa 123, 128, 60 N.W.2d 784.

Plaintiff sued on an insurance policy. Defendant denied that the policy was in force or in existence. The testimony as to

what happened to the policy and what defendant did with the premium payments came from defendant's agent and witness. Evidence that premium payments were made and accepted was no surprise to defendant. The testimony relative thereto came from defendant's supervisor of accounting and collections.

There was no such substantial change in the issues as to make the allowance of the amendment an abuse of discretion.

IV. As applied to the case at bar the trial court could find that the principles of equitable estoppel had been established. In Seymour v. City of Ames, 218 Iowa 615, 619, 255 N.W. 874, 876, we said:

"An estoppel is based upon the idea that one who has made a certain representation or taken a certain position, should not thereafter be permitted to change his position to the prejudice of one who has relied thereon."

This is quoted with approval in Riggs v. Meka, 236 Iowa 118, 122, 17 N.W.2d 101, and cited with approval in Sanborn v. Maryland Casualty Co., 255 Iowa 1319, 1327, 125 N.W.2d 758.

In Sanborn, supra, we quoted with approval from 31 C. J. S., Estoppel, section 59, as follows:

" 'Equitable estoppel or estoppel by misrepresentation is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct; and it arises where a person, by his acts, representations, or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence induces another to believe that certain facts exist, and the other person rightfully relies and acts on such belief, and will be prejudiced if the former is permitted to deny the existence of such facts.' "

We also said: "We have applied these principles in cases involving attempts to forfeit insurance policies for non-payment of premiums where a custom had been established of giving notice of due date or of taking payment thereafter." (Loc. cit. 1328)

Plaintiff's proof of reliance on the custom of making and accepting belated premium payments does not depend on the 1963 check transactions. Those payments were in conformity with custom but they did not create the custom on which plain-

tiff relied. The custom was created by the Stoker agency in June 1956. Since June 8, 1956, plaintiff had automobile insurance with defendant through the Stoker agency. The anniversary of the policy was always June 8. The 1956 premium was collected by debit slip on June 25, the 1957 premium on July 30, 1957, the 1958 premium on July 18, 1958, the 1959 premium on October 30, 1959, the first half of the 1961 premium on July 12, 1961, and the second half on September 5, 1961, and the 1962 premium in two equal payments on August 3 and October 17, 1962. The exhibits do not show when the 1960 premium was paid.

The customary procedure was such that plaintiff could and his actions indicate that he did rely thereon. Since 1956 plaintiff's insurance had been kept in force and belated premiums accepted. The premium for the period from June 8, 1963, to June 8, 1964, was accepted by defendant. The trial court could find that the proof necessary to establish an estoppel appears.

V. Plaintiff's petition asked recovery for damage to the automobile and medical expense. There was no prayer for interest. The trial court overlooked this rather unusual omission and allowed interest. Judgment cannot be rendered for items not claimed. Except for the allowance of interest prior to judgment we find no reversible error.

The case is affirmed except for the allowance of interest from July 10, 1963. The trial court's judgment entry was dated March 29, 1965. Interest should be allowed from that date. Section 625.21 and section 535.3, 1962 Code of Iowa. That part of the judgment entry allowing interest from July 10, 1963, to March 29, 1965, is reversed. The case is remanded to the district court for correction of the judgment in accordance herewith.

Affirmed except for allowance of interest.

Modified, affirmed and remanded.

All Justices concur except Justices Stuart and Mason who dissent.

Stuart, J.—I. I agree with the majority when it states this case depends "on proof of a custom established by defendant and relied on by plaintiff." From there, I must go my separate

way for two reasons. (1) The record shows the established custom and business practice was not followed here. (2) Plaintiff's own testimony shows he did not rely on the automatic renewal of the policy in question.

There was sufficient evidence to establish a practice of automatic renewal by the agent who remitted the premium to the company on schedule and collected from plaintiff when his bank account had sufficient funds. The policies were kept by the agent. Had nothing else been done there would have been no question of plaintiff's right to rely on these practices.

Prior to the time this policy became due, however, plaintiff had moved to another locality. His bank account became inactive and had had only $1.11 in it since March 12, 1963. On May 24, 1963, the agent sent him the speed letter set forth in the majority opinion. At that time plaintiff knew the name of the company in which he had his automobile insurance and the number of the policy because he had collected a small claim in February 1963. He had never received such a notification before and it was not part of custom or past business dealings. Therefore, custom or usage could only apply if the wording of the speed letter is such that it could have been interpreted the past custom and usage was to continue in spite of the letter. I think the wording was sufficiently confused that plaintiff could well have believed the agent would renew the policy as he had done in the past. But evidence that he *could* have so believed or had the *right to rely* on custom and usage is not sufficient. Plaintiff must also establish that he *did rely* on such automatic renewal.

It is on this point that plaintiff's case must fail.

The majority opinion brushes lightly over plaintiff's testimony concerning Exhibit 4 which is the speed letter. I consider it determinative. On direct examination he testified:

"When I received Exhibit (4) I did not know what insurance company it referred to. I had other insurance policies with the Stoker Agency when I received Exhibit (4). Exhibit (4) was laid aside and I thought whenever we got time I would go up and see Tom about it. I was going to see what this meant or see what was up there; what insurance it was."

Between the time he received Exhibit 4 and the accident he

did not talk to any other insurance company or agent and had no further correspondence with his agent or defendant.

On cross-examination he said: "When I received Exhibit (4) there was no question in my mind, I thought an insurance policy was expiring on June 8, 1963. I knew an insurance policy would not be renewed on June 8, 1963, but I did not know which policy.

"When I received the notice from Mr. Stoker in May of 1963 I was aware at that time that a policy of insurance I had with the Stoker Agency was due on June 8, 1963.

"I was aware at the time I received the notice from Mr. Stoker in May of 1963 that the insurance policy was going to expire on June 8, 1963. I never contacted Mr. Stoker in an effort to determine which policy of insurance was going to expire. I did know a policy was going to expire."

On redirect he said: "On cross-examination I was asked if I was aware the policy was going to expire and I answered yes. And then the question was asked whether I contacted Mr. Stoker and said no. To my knowledge my wife did not contact Mr. Stoker after I received Exhibit (4) which is a memo from Mr. Stoker.

"No one on my behalf contacted the Stoker Agency or Hawkeye Insurance Company after I received Exhibit (4) prior to July 11, 1963.

"I realized the policy was going to expire but I didn't figure it was going to cancel out. I did not definitely know which policy was going to expire."

Because of this answer and language in the majority opinion, it might be well to point out there is no claim of cancellation or notice of cancellation. The claim is the policy expired and was not renewed by a new contract. There is a substantial difference.

I am unable to see how, in the face of these clear, positive and undenied statements, the majority can find plaintiff's acts constitute substantial evidence of reliance. He received a letter from which he understood one of his insurance policies would not be renewed. He put the letter in a drawer and did no more about it. These are all his actions that are shown and they fall far

short of showing reliance. He should not be permitted to recover on an expired policy because he did not bother to find out which one had expired. While the majority does not specifically approve of such conduct, its decision has that effect.

The agent testified the letter was to inform plaintiff his policy would not be renewed. Plaintiff so understood it. The fact the letter might have induced reliance on past custom or usage on the part of another is of no consequence.

II. I am not sure of the theory on which the majority apparently fixes liability on defendant because of its acceptance of two premium checks indicating they were to pay premiums on the policy in question. It could not have been on the estoppel theory because all of these acts took place after the accident occurred. It also seems elementary there was no meeting of the minds, if it is sought to apply the contract theory.

Plaintiff went to another agency for defendant-company and took out a policy on a different car after the accident. He did not pay the agent but sent checks directly to the company labeled as stated in the majority opinion. In spite of the legend and excessive amount, the checks were cashed and payment credited on the account of the new agent for the new policy. He was notified and was expected to refund the difference to plaintiff. There is no claim any other amounts were paid on the new policy.

The case of Forrest v. Sovereign Camp, Woodmen of the World, 220 Iowa 478, 261 N.W. 802, is not in point. The defense here was not lapse for nonpayment of premium. The question is whether there ever was a contract for which the premium became due. "A binding contract of renewal must be clearly established, and must have all the essentials of a valid contract, as in the creation of the contract in the first instance * * *. Thus a renewal cannot be effected or consummated without the mutual assent of the parties and a meeting of the minds of the parties on all the essentials of the contract and a new consideration." 44 C. J. S., 1126–27, Insurance, section 283. There was no meeting of the minds here. The trial court did not find for plaintiff on the contract theory.

III. Although it seems to me an amendment which changes a cause of action from one on contract to a claim of action and

conduct which estop a party from denying the contract substantially changes the issues in the lawsuit, the majority feels this was a matter of the trial court's discretion. It would be of no avail to pursue the matter further, especially since I am unable to find enough evidence of estoppel to merit an amendment to conform to the proof.

I would reverse.

JUSTICE MASON joins in this dissent.