**Richard L. HENSLEY, Appellee,**

v.

**The AETNA CASUALTY AND SURETY COMPANY, a corporation, and E. H. Lougee, Inc., a corporation, Appellants.**

**No. 55038.**

Supreme Court of Iowa.

Sept. 19, 1972.

Johnson, Stuart, Tinley, Peters & Thorn, Council Bluffs, for appellants.

Peters, Walker, Campbell & Pearson, Council Bluffs, for appellee.

LeGRAND, Justice.

This is a declaratory judgment action tried at law by which plaintiff seeks a determination of his rights under a contract of insurance, with defendant, The Aetna Casualty and Surety Company, hereafter called Aetna. Defendant, E. H. Lougee, Inc., hereafter called Lougee, is the agency through which the policy was written. The trial court held the policy afforded coverage to plaintiff for his liability arising out of an accident on October 16, 1966. We reverse the trial court.

The facts are these: Plaintiff had purchased insurance for some time through Lougee. In 1963, he purchased an automobile policy in Aetna through this agent. The policy was issued for a three-month period and was renewable by the payment of additional premiums each quarter. Premiums were paid through April 9, 1965, which maintained the policy in force until July 9, 1965. No premiums were paid thereafter.

On October 16, 1966, plaintiff was involved in an accident which resulted in personal injuries and property damage to the other party and collision loss to plaintiff. The day following the accident, plaintiff completed an accident report at Lougee's office. The report was sent to Aetna's claim office at Omaha. On November 8, 1966, Aetna advised plaintiff he had no insurance coverage and, indeed, had not had any since July 9, 1965, because of non-payment of premium. Aetna refused to defend plaintiff in the suit subsequently brought as a result of the October 16, 1966, accident. This action resulted in judgments against plaintiff totalling $2284.35. He also incurred attorneys' fees and expenses in the amount of $1300.05.

By this action plaintiff seeks a determination that his policy was in full force and effect on October 16, 1966; that Aetna was obligated to defend any action and to pay any judgment rendered against him within the limits of its liability; and that Aetna had breached its contract by refusing to defend the suit or to pay the judgments. The trial court entered judgment ordering the defendants to pay the items above listed as well as plaintiff's collision damage of $254.14.

The ultimate issue, of course, is whether the policy in question extended plaintiff coverage on October 16, 1966, despite his failure to pay premiums after April 9, 1965. In Hoefler v. Farm and City Insurance Company, 193 N.W.2d 538 (Iowa 1972)—decided after the trial of the present case—we considered this identical question under somewhat different facts. Unless these factual differences make the Hoefler case inapplicable, it is controlling here. We are unable to distinguish them and therefore reverse the trial court's judgment for plaintiff.

This was a law action, and we must accept the trial court's findings of fact if they find substantial support in the record. Rules 334 and 344(f), 1, Rules of Civil Procedure. However, we are not bound by the rules of law which the court applied to those facts. Omaha Standard, Inc. v. Nissen, 187 N.W.2d 721, 723 (Iowa 1971); Henschel v. Hawkeye-Security Insurance Company, 178 N.W.2d 409, 415 (Iowa 1970).

We hold there is substantial support for the trial court's findings, but conclude they do not justify the conclusions reached. We disagree with the pronouncement Aetna was obliged to give plaintiff notice of cancellation of his policy under the terms of section 515.80, The Code.

The pertinent policy provisions are of importance here. Under the policy declarations this appears:

"Policy Period—Quarter-annual period commencing 7-09-63 and, subject to the consent of Aetna Casualty, for successive quarter-annual policy periods as provided in Condition 1."

Condition 1 referred to in the declaration states in part:

"Subject to the consent of Aetna Casualty, this policy may be continued in force for successive policy periods by payment of the required continuation premium to Aetna Casualty on or before the effective date of each successive policy period. If such premium is not paid, when due, the policy shall terminate as of that date and such date shall be the end of the policy period. * * *"

In Hoefler v. Farm and City Insurance Company, supra, we interpreted a similar provision as being beyond the notice requirements of section 515.80. Because we feel that case dictates the result here, we repeat what we said there at page 539 of 193 N.W.2d:

" * * * The parties agree the issue is simply this: Was the policy issued by defendant to plaintiff for a definite period or an indefinite one?

"If for an indefinite period, then plaintiff was entitled to notice under section 515.80, The Code, which provides as follows:

" 'No policy or contract of insurance * * * shall be forfeited or suspended for non-payment of any premium, assessment, or installment provided for in the policy, * * * unless within thirty days prior to, or on or after the maturity thereof, the company shall serve notice in writing upon the insured that such premium, assessment, or installment is due or to become due * * * which may be made in person, or by mailing in a certified mail letter addressed to the insured at his post office as given in or upon the policy, and no suspension, forfeiture, or cancellation shall take effect until the time thus fixed and except as herein provided, anything in the policy, application, or a separate agreement to the contrary notwithstanding.'

"It is conceded the notice required by this section was not given. Defendant argues, however, that the statute has no application because this is not a suspension, forfeiture or cancellation but merely the expiration of a policy under its specific terms. Defendant argues further that the case is governed by rule 9, Rules of the Insurance Department. (Iowa Departmental Rules, 1966; now appearing as rules 16.1(1) and 16.1(2), I.D.R., 1971) The rule is in part as follows:

" 'A contract of insurance may specifically provide for a specific term of duration, in which event the contract automatically expires at the end of that term, without the giving of any notice. For illustration, a policy written for a term of one year with the premium paid in advance automatically expires at the end of the year.'

* * * * * * .

"We find no ambiguity or uncertainty here. The policy was written for a definite and certain period. Both starting and terminating dates were given with certainty. There could be no possible misunderstanding about the term of the policy or its expiration date.

* * * * * *

"We hold the policy issued by defendant was for a 'specific term of duration' and that, under rule 9 of the Insurance Department's regulations above referred to, defendant company was not required to give the notice provided for in section 515.80. * * *"

In the present case, too, we hold the policy is for a "definite and certain period." It terminated by its own specific terms and defendant was not required to give the notice provided for in section 515.80.

The trial court ruled Aetna was estopped from relying on the non-payment of premium for the policy period beginning July 9, 1965. Even if we concur in this conclusion, the estoppel would only save plaintiff's coverage for the ensuing three-month period. The accident did not occur during that time. Surely no one could seriously

argue plaintiff's insurance continued indefinitely because of this; yet that is the inevitable result of plaintiff's premise.

The best that can be said for plaintiff is that the conduct of Aetna and Lougee gave him an additional three months of insurance, which would expire (unless renewed as provided in the policy) on October 9, 1965.

■ Several circumstances occurring thereafter, which the trial court relied on to find coverage existed on October 16, 1966, would not revive a policy previously terminated, as we say this one was. These circumstances include accepting an accident report from plaintiff for a prior accident on January 12, 1966, which, the trial court says, "lulled plaintiff into the belief his insurance was in effect and defendant should not now profit from those neglectful acts and their failure to exercise the duties which it seems the law requires of them."

The trial court also held it important that Aetna had $16 of premium money paid by plaintiff as additional premium when he purchased a new car in May of 1965. This amount had never been properly applied by Aetna. A portion of it was returned to plaintiff only after the October 16, 1966, accident. No matter how this amount is treated it could not afford coverage on October 16, 1966. At most it would pay for part of the premium from July 9 to October 9, 1965.

Neither does Lougee's action in accepting an accident report from plaintiff for the October 16, 1966, accident help plaintiff. This was done on the assumption there was coverage. Aetna advised plaintiff of his no-coverage status promptly upon receiving the report from Lougee.

The same is true of the report to the Commissioner of Insurance indicating coverage for plaintiff. Unless we are to hold this creates a contract between Aetna and plaintiff where none otherwise existed, it is of no help to plaintiff here.

We hold the trial court erroneously ruled plaintiff's insurance policy was in effect on October 16, 1966. The case is reversed with instructions that judgment be entered for both Aetna and Lougee with costs assessed to plaintiff.

Reversed.

All Justices concur, except REYNOLDSON, UHLENHOPP and McCORMICK, JJ., who dissent.

REYNOLDSON, Justice (dissenting).

I. Stripped to essentials pertinent in this litigation, § 515.80, The Code, provides no policy of insurance shall be forfeited for nonpayment of premium unless the company serves a notice on the insured, either personally or by certified mail, "anything in the policy, application, or a separate agreement to the contrary notwithstanding."

Amplifying this legislative prohibition, the Insurance Department (Rule 9, 1966 I. D.R. 327) declared where the term is specific and expires at the end of the term no such notice is required,

"However, in the event no definite term is fixed in the policy, or if the policy is for a definite period with premium payments made in installments at shorter intervals, * * * then before the policy can be legally forfeited or suspended for nonpayment of the premium when due or on the installment dates, * * * a thirty days notice must be given. * * *"

Interpretation of this statute and rule cannot be separated from the public policy inherent in its language. Section 515.80 is for protection of the policyholder, not the insurance company. Required is a notice in such form the insured will have actual knowledge of his lack of insurance and opportunity to secure coverage elsewhere. The personal financial disaster which might otherwise occur, as it did here, is

thereby avoided. Indirectly benefited are other highway users who are protected from the uninsured motorist.

If the insurance contract were for an indefinite term with periodic premium payments, clearly cancellation for nonpayment of installments would require the meaningful notice dictated by the statute. The question here is whether this company, by ingenious and ambiguous contract terms, coupled with the course of dealing later referred to, can achieve the same benefits to the company and yet avoid the notice obligation imposed by the legislature in § 515.-80.

The majority opinion crowns the company's effort, holding its policy one for a definite period and the situation thus controlled by Hoefler v. Farm and City Insurance Company, 193 N.W.2d 538 (Iowa 1972). The contract before us goes beyond the *Hoefler* holding and is distinguishable from it.

In *Hoefler,* as the majority opinion in that case noted, there was a fixed date of contract termination. To that extent Hoefler's policy followed the standard form. See The Iowa State Bar Association, "The Family Automobile Insurance Policy Annotated," (1970), "Policy Period From ———— to ———— (Mo. Day Year)." No stated date for contract termination appears in the instant policy. The "policy period" is defined as a "quarter-annual period" commencing 7–9–63. The declaration page sets out the "Quarter-Annual Premium Schedule." Such language belies company's claim only a fixed three-month period was contemplated by these parties. The ordinary layman would logically interpret such a policy as indefinite or continuing in character, payable on a quarter-annual basis.

Still pursuing the unrealistic fiction the policy manifests a meeting of minds of contracting parties, consideration should also be given to these terms:

"After this policy has been in effect for sixty days or, if the policy is a renewal, effective immediately, Aetna Casualty shall not exercise its right to cancel the insurance * * * unless

1. The named Insured fails to discharge when due any of his obligations in connection with the payment of premium for this policy or any installment thereof * * *."

Construing this provision against the company, as our rules require, upon cancellation following nonpayment of premium or an installment thereof, the company would be required to follow the statute. See Selken v. Northland Insurance Company, 249 Iowa 1046, 90 N.W.2d 29 (1958), in which this court zealously protected the policyholder's right to actual notice. In any event, on the basis of this clause the insured might reasonably conclude he would receive the statutory notice of cancellation in the event the company did not receive premium payments.

The conduct of the company after the policy went into force also manifested its actual intent that the policy was for an indefinite term, or continuing in nature. Quarterly notices of premium due were sent to the insured for almost two years. Hensley paid these as billed, frequently at Lougee's office. Trial court's findings, approved by majority's opinion, included the fact that after Aetna instituted a new computer billing in 1965, Hensley received no more premium notices. The court also found the Hensleys were methodical people who paid in cash when billed.

In Mayer v. The Mutual Life Ins. Co. of Chicago, 38 Iowa 304, 309 (1874) this court reasoned,

"Now it must strike every reasonable mind, that a majority of ordinarily prudent persons, who had been customarily notified of the time when premiums upon their policies became due, and who had received no notice of an intention to abandon the customary course, would, in a particular case expect and await a like notice. And if such is the reasonable

and natural result of the previous dealings of the company, it must govern its future conduct so as to accord with the reasonable expectation thus created.

"That is, having furnished a policy holder reasonable ground for expecting that he will be advised when his premium becomes due, the company must continue to give such notice until it furnishes the assured notice that he need no longer expect it. Any other construction would make the law a trap to ensnare the unwary.

"For a person thus accustomed to notice and, not accustomed to charge his memory with the day when his premium became due, would very likely, in the absence of notice to allow the day for making payment to pass by, in utter forgetfulness of the premium * * *."

Projecting *Mayer*, we should judicially note in the ensuing 98 years there has been an explosive expansion of business conducted by billing. The ordinary person usually receives and pays many bills each month. He relies on billings to remind him of all manner of obligations, including insurance installments. This record satisfactorily proves Hensleys were no exception.

Aetna's computer error was further compounded by its acceptance and processing of a prior accident report by Hensley over six months after it contends the policy terminated.

July 9, 1965, the day after the policy expired by Aetna's reasoning, it accepted a $16 premium payment, $11 of which it kept until after the accident of October 16, 1966. More significant, the company had a fixed policy to accept premium payments during a "grace period" after (if its rationale is to be accepted) the policy expired.

Under these facts, and as bearing on whether the policy was one of fixed duration or whether it was for a term indefinite or continuing in nature, the rationale of this court in Conrad v. Midwest Coal Co., 231 Iowa 53, 300 N.W. 721 (1941) *modified*, 3 N.W.2d 511 (1942) is persuasive. There the company contended the policy was written solely for the period between August 12, 1937 and Sept. 1, 1937 and as the policy had lapsed, it had no liability for an accident on Sept. 9, 1937. The policy provided for further extension or renewal upon payment of premium on or before ten days after the end of the term. The premium was paid September 13, 1937. This court there held, 231 Iowa at 62, 3 N.W.2d at 512,

"It is our conclusion that the amendment * * * demonstrates that the parties contemplated a continuing policy because it contained an agreement on the part of the insured to pay the premiums beyond the termination date of the policy * * *."

Applying the *Conrad* rationale to the case before us can result in but one conclusion: Hensley's policy was for an indefinite term or continuous in nature. Here, as there, the company as a matter of fixed policy and procedure accepted premium payments after the "expiration" of the term.

In both Minnick v. State Farm Mutual Automobile Ins. Co., 54 Del. 125, 174 A.2d 706 (Super.Ct.1961) and in Seavey v. Erickson, 244 Minn. 232, 69 N.W.2d 889 (1955) the insurance companies relied upon the policies' "automatic cancellation" feature, claiming the policies lapsed and that no policy notices of forfeiture were required. In both cases the courts in rejecting such arguments relied in part on the fixed practice of the insurers to automatically bill and to accept payments following the due date. For further authority such a contract is a "continuing policy," see Mitchell v. Farmers Insurance Exchange, 396 S.W.2d 647 (Mo.1965).

In the case before us, not only the contract language but the company's conduct would support the conclusion an indefinite term and not a fixed term policy was in-

tended. This being so, a § 515.80 notice was required to terminate the coverage.

II. Returning to the premium payment kept by Aetna, numerous jurisdictions hold a policy can be effectively cancelled only if the insurer returns or tenders the unearned premium. Such a refund or offer to refund is in the nature of a condition precedent to the insurer's exercise of its rights, and an offer to pay following the accident is too late. See 6A Appleman, Insurance Law & Practice § 4189, pp. 578–81 (1972). This rule prevails in Iowa. Harrington v. Bremer County Farmers' Mut. Fire Ins. Ass'n, 203 Iowa 282, 211 N.W. 383 (1926).

The same rule should apply even when the company claims contract termination by expiration of the period. We should not permit the company access to that immunity when, throughout the period it failed to send notices to the insured, it held his money without applying it to the contract or tendering its return. A refund check offered Hensley could well have alerted him to company's claim he had no insurance.

III. Lastly, an overview of all the above circumstances confirms Hensely's pleaded theory the company was estopped to deny his rights under the policy, and trial court's judgment adopting that theory.

In Sanborn v. Maryland Casualty Company, 255 Iowa 1319, 1327, 125 N.W.2d 758, 763 (1964) this court quoted and applied the general rule here applicable:

"31 C.J.S. Estoppel § 59, page 367, states:

'Equitable estoppel or estoppel by misrepresentation is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct; and it arises where a person by his acts, representations, or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence induces another to believe that certain facts exist, and the other person rightfully relies and acts on such belief, and will be prejudiced if the former is permitted to deny the existence of such facts.' See also 19 Am.Jur., Estoppel, section 34, page 634."

In *Sanborn* we denied the insurer's right to claim non-coverage even though the policy term had expired before the accident. See also Laverty v. Hawkeye Security Insurance Company, 258 Iowa 717, 140 N.W.2d 83 (1966).

Equitable estoppel may be foundationed on the practice or usage of the particular insurer:

"*§ 30.128 Custom and usage as a basis for notice requirement.*

By the weight of authority and by what is the more equitable view, the necessity for giving notice of the amount and date on which a premium is due may be based upon the practice or usage of the particular insurer."

—5 Couch On Insurance 2d § 30.128 at 661 (1960).

See also 16A Appleman Insurance Law & Practice § 9254 at 639 (1968), "[T]he insurer may be estopped by its actions from denying the existence of an insurance contract."

This rule was adopted by the Delaware Superior Court in *Minnick*, supra, 54 Del. at 139–140, 174 A.2d at 714:

"Insured had received the benefit of this service [notice of renewal premiums due] for the life of his policy, a period of several years. This is an adequate time to establish a custom and usage in the dealings between the parties. Defendant had a right to relax and rely upon the anticipated notice advising him of the impending due date. * * * I * * * hold that defendant could not declare plaintiff's policy lapsed, cancelled, forfeited or in default for non-

payment of premiums until it had given plaintiff seasonable notice * * *."

In Seavey v. Erickson, 244 Minn. 232, 243–244, 69 N.W.2d 889, 897 (1955), the Minnesota Supreme Court noted the inequity of any different rule:

"We believe the better rule to be that, where it has been established that it is the custom and practice of the insurer to give notice of the time for payment of a renewal premium and knowledge of such custom is acquired by an insured in dealings with the insurer, the insured has a right to rely on such notice, and, in the absence thereof, the policy may not be terminated or forfeited without giving the insured some notice that such custom has been abandoned.

"Any other rule simply would create a trap which could be used as a convenient device to work a forfeiture when it was to the interest of the insurer to invoke the express provisions of the policy and permit it to waive such provisions and collect the premium when it was to its interest to do so."

The equitable estoppel rule should be invoked here, based on Aetna's failure to send the customary premium notices, acceptance of payment on the policy after the claimed expiration, processing routinely an earlier accident report six months after the claimed termination of policy, and retention without application or retender of the premium payment made.

Where the equitable estoppel rule denies insurer the right to claim the non-existence of the insurance contract, then the notice requirement of § 515.80 should apply. It is undisputed the statutory notice was never given in the instant case.

The judgment below should be affirmed against Aetna. There was no basis in the record for holding E. H. Lougee, Inc. liable for the acts of its disclosed principal and as to that defendant only, I would reverse.

UHLENHOPP, and McCORMICK, JJ., join in this dissent.