M. AVIS LOCKIE, Appellant, v. ESTATE OF MARY E. BAKER et al., Appellees.

No. 39846.

OCTOBER 22, 1929.

1294

*Charles Lockie* and *O. D. Nickle,* for appellant.

*Jepson, Struble, Anderson & Sifford* and *John T. Stecker,* for appellees.

GRIMM, J.—Mary E. Baker, the testatrix in this case, executed the will in controversy on November 28, 1924. She died August 20, 1926. Mrs. Baker was approximately 79 years old at the time of her death. The will was filed September 1, 1926. It was admitted to probate on the 4th day of October, 1926. This suit was begun by M. Avis Lockie, plaintiff, daughter of the testatrix, on the 26th day of November, 1928. The husband of testatrix died in 1911. Mr. Baker was a farmer, owning and operating a farm just out of the corporate limits of the town of Akron. After Mr. Baker's death, testatrix lived at the same place until her death. A short time after her husband's death, her son, Alanson, lived with her, but for a number of years prior to her death, she lived alone. The husband of the testatrix died intestate, leaving a substantial estate. The testatrix had three children: Alanson Baker, a son, and Sarah R. Talbott and the plaintiff, M. Avis Lockie, daughters. The Alanson Bakers had two children, Elizabeth and Charlotte. The Talbotts had three children, Ruth, Ora, and Muriel. The Lockies had two children, Lionel and Helen. The will provided for the payment of debts and funeral expenses, and gave to Alanson Baker, the son, what is known as the home place, valued at approximately $22,000, but claimed by the appellant to be worth $32,000. It gave to the daughter Mrs. Talbott another farm, of 132 acres, valued at approximately $20,000. By the terms of the will, the daughter Mrs. Lockie was given a life estate in four lots in the town of Akron, which the appellant claims was worth $3,000, the ownership of which, after her death, passed to her two children. The balance of the property, valued at about $6,000, was bequeathed in equal shares to the seven grandchildren hereinbefore named. Alanson Baker was named as executor.

The appellant contests the will, claiming that the testatrix

was the victim of insane delusions, and therefore did not have testamentary capacity at the time the will was made. She also claims that Alanson Baker, the executor, exercised undue influence over the testatrix at the time of the execution of the will.

I. It appears that, at the September, 1928, term of the Plymouth County court, this case was originally brought on for hearing. After a jury was impaneled and sworn and the  taking of testimony had started, plaintiff filed an amendment to the petition, alleging, in substance, "that, during the month of October, 1926, there were negotiations for a settlement of the difficulties between the plaintiff and the other heirs in the Baker estate, by the terms of which Mrs. Talbott and Alanson Baker agreed to pay to the plaintiff herein certain sums of money, in consideration that M. Avis Lockie would withdraw all objections to the will, and permitting the probate of the will." Later Mrs. Lockie brought an action for specific performance of the said alleged oral contract which she claimed was entered into just before the will was probated. This case was finally determined adversely to Mrs. Lockie in this court (see *Lockie v. Baker*, 206 Iowa 21). The defendants filed a motion to strike the amendment, and the court sustained the motion, and the trial proceeded. After a considerable amount of testimony had been taken, plaintiff filed a motion for continuance, and it was granted. The case came on the second time some two months thereafter; and after the jury had been impaneled and sworn and the opening statements of counsel made, the amendment was again tendered by the plaintiff, over the objections of the defendants. The court rejected the tender, principally on the ground that the pleading came too late. In ruling upon the amendment, the trial court said:

"When the pleading in question was stricken at the preceding trial, counsel for the defendants had a right to assume it was out of the case, and were under no obligations to give it any further consideration in preparation for this trial; and the presentation of this amendment at this time is, in my opinion, too late, and would of itself be sufficient warrant for refusing the tender. The court, however, makes its rulings generally, and bases it not alone upon the fact that the pleading is filed too late, but also upon the other objections made by counsel for

the defendants when the same was stricken at the preceding trial.''

The record does not disclose the objections made to the amendment when first filed, but manifestly, under the well established rules of procedure in this state, concerning which citations are unnecessary, the trial court did not abuse its discretion in rejecting the amendment.

II. As previously stated, the plaintiff charged Alanson Baker with exercising undue influence over the mother, the testatrix, at the time of making the will. The appellant, in the first few pages of the abstract, presented very briefly the testimony of a Mr. Shoulberg, a banker, C. H. Maxon, a realtor, the plaintiff, Mrs. Lockie, and Charles Lockie, her husband, after which the appellant states:

''The foregoing brief abstract of the evidence is all the material evidence that in our opinion is necessary, for the court to clearly understand the plaintiff's proof concerning the delusion complained of, and as set out in Paragraphs 4 and 5 of the petition. It is not contended that the evidence sustains any of the other counts of the petition.''

There were no other witnesses presented on behalf of the plaintiff. It would appear from the foregoing that the plaintiff has abandoned the claim of undue influence. At another point in the abstract, the testimony given by each of the foregoing four witnesses is set forth at greater length. The evidence shows that the son, Alanson, assisted his mother in looking after her bank account; and there is some evidence to show that, for some little time prior to her death, he drew some of her checks. She had a safety deposit box, and her son had access to it. For the last few years prior to the death of the testatrix, plaintiff and her husband lived at Sioux City, about 30 miles from Akron, where testatrix lived. Frequent visits were made by the daughter and her husband at the home of the testatrix. There is some evidence given by the plaintiff to the effect that the brother, Alanson, and the sister, Mrs. Talbott, tried at times to discourage the plaintiff from visiting her mother. It appears, however, that what little there was of this was largely by Mrs. Talbott. We have examined the whole record carefully on the subject, and find that there is an utter failure of testimony in support of

the charge that Alanson Baker exercised any undue influence over the testatrix at the time she made the will in controversy.

III. It is claimed by the appellant that the testatrix was, at the time of the making of the will, suffering from an insane delusion, and therefore was lacking in testamentary capacity. The witness Maxon testified on the subject as follows:

"That he had talked with the deceased some three years before she died, and before the will in question was made, in which she said she understood that Mr. Lockie [plaintiff's husband] had got most of the property away from her daughter Avis; and that Mrs. Baker liked the way a neighbor's will was made, as he left his children only a life estate, and she believed she might make hers that way."

The plaintiff testified on the subject:

"That she was present at a conversation held between her mother and Mr. Lockie about two years before she died. When I came into the room, he was talking to her about mother, telling me he had got all my property away from me, and he was trying to prove to her that it was not so. He said that he would prove it to her by showing her the deeds and the insurance papers and the tax receipts and everything, showing that it still was in my name; and she said that maybe he could prove it that way, but it might be anybody's signatures on those papers and he still have it in his name just the same; and she thought there was some way that he could cover it up and still make it look all right."

Mr. Lockie testified that, two or three years before Mrs. Baker died, he "learned the testatrix misunderstood some matters connected with him. Whereupon he and his wife called upon the testatrix." The testimony as abstracted is as follows:

"I went up to Akron and talked to her about it. Mrs. Lockie was with me at the time. My wife did not take any part in the conversation. From that time on, I did not visit there often. Mrs. Lockie got some property from her father's estate when he died, as did her brother, sister, and mother. That property still stands in the name of my wife, M. Avis Lockie. Only one piece of property has been sold, and to take its place, our

home in Sioux City, worth twice as much, is in her name. The rents from the property in Akron are deposited in the First National Bank in Akron, and the account is in her name. Mrs. Lockie did not at any time turn any of her property over to me, nor did I ever take over or have put in my name or under my control any of the property that was left to my wife by her father; and I tried to prove to my wife's mother that I never did.''

That is all of the evidence in the record on the subject which precedes the statement of appellant in the abstract, hereinbefore quoted, concerning plaintiff's proof on the question of the delusion.

It will be noted that one piece of the property which the plaintiff received from her father was sold, and the proceeds transformed into a homestead in Sioux City, occupied by the plaintiff and her husband, Mr. Lockie. There is nothing in the record to disclose upon what the testatrix based the belief, if she had such belief, that the husband of the plaintiff had procured any of the plaintiff's property. The only disinterested witness, Maxon, only went so far as to quote the testatrix as saying: "She *understood* that Mr. Lockie had got most of the property away from her daughter." On cross-examination, he admitted that he didn't know whether this conversation was before or after the making of the will.

The testimony of the plaintiff does not disclose that Mr. Lockie may not have finally convinced the testatrix that he had not gotten any of the plaintiff's property. Mr. Lockie is silent on the subject, and is content to testify that he had not taken any of his wife's property, but states that one piece of property belonging to the wife had been sold, and the proceeds placed in a home. In addition to the testimony pertaining to the alleged insane delusion, the record shows that, clear up to the time of her death, she, to a great extent, looked after her own bank account in person, or through her son, Alanson Baker. She frequently talked with the banker over the telephone, and drew most of her own checks. One check was introduced in evidence, drawn by her five days before her death. The banker with whom she did her business testified that he never had any trouble in understanding her, either when she came to the bank to transact her business or when he talked with her over the

telephone. He testified that he frequently called at her house, to talk over business matters with her, and had no trouble in understanding her. He testified that he never observed anything about Mrs. Baker that indicated that she was unable to take care of her business and to understand it. The plaintiff herself testified:

"There had been no misunderstanding or ill feeling between my mother and Mr. Lockie and myself. * * * My mother and I were always upon friendly terms, and we never had any trouble."

In the trial of the instant case, the plaintiff was asked concerning her testimony on the trial of the specific performance case hereinbefore referred to. She was asked:

"In the trial of that case I have just mentioned to you, and on that date, January 27, 1927, I will ask you if you were not asked this question: 'Question. All that you ever thought or claimed about the will was that you were not treated equally with the other children?' We asked you that question. Do you remember? A. I don't remember. Q. And did you make this answer? 'Answer. I thought it was unjust. I was not treated right.' Did you make that answer, Mrs. Lockie? A. Probably I did, and felt that way."

That seems to have been her thought on the subject when she was pressing her suit for specific performance. The evidence shows that Mr. Lockie was a lawyer in Sioux City, "and did considerable business for Mrs. Baker, like quieting title on one piece of property, and getting a mortgage renewal straightened out, and in selling some property to the city, and helping her with her income tax report." This business relation existed until about two years before the death of the testatrix. The evidence shows that Mrs. Baker gave to Mr. Lockie a check for $1,650 as a fee for the mortgage renewal above referred to.

What constitutes an insane delusion has very recently been fully defined by this court in *Firestine v. Atkinson*, 206 Iowa 151. The cases and definitions are there reviewed and carefully considered. It is unnecessary to cite them here. It would serve no good purpose to repeat the discussion or to add to it.

The establishment of an insane delusion, as applied to this

case, involves proof that the testatrix believed certain things concerning the taking of the plaintiff's property by her husband, which was a mistake, and that she had no evidence whatever upon which to base such belief; that the things which she believed were false, and were adhered to by the testatrix after their falsity had been shown by reasonable evidence; that the things which testatrix believed, were things that no person of sound mind would believe; that the testatrix refused to yield or give up such irrational belief, in the face of such reasonable evidence as would convince an ordinary, sound, and healthy mind; and lastly, that the existence of such delusion was present in the mind of the testatrix and exercised a controlling influence over her at the time the will was executed. The contestant has utterly failed in the required proof.

The district court correctly directed a verdict for the defendants, and the case must be, and is,—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.