M. G. LAWYER, Appellant, v. TOM STANSELL et al., Appellees.

No. 41996.

NOVEMBER 14, 1933.

Watson & Watson, for appellant.

M. R. Stansell and O. M: Slaymaker, for appellees.

ANDERSON, J.—This was an action at law against Tom Stansell, sheriff of Clarke county, Iowa, for damages by reason of an assault and battery. There was a general denial and plea of justification. A trial to a jury resulted in a verdict for the defendant. The court overruled a motion for new trial and exceptions to instructions, and rendered judgment against the plaintiff for costs. The plaintiff appeals.

The incident of which plaintiff-appellant complains, occurred in the city of Osceola, Clarke county, Iowa, at about 3:30 a. m., September 5, 1932, and at the junction or intersection of federal highways No. 34 and No. 65, which was two blocks from the courthouse square or the business district of Osceola. The plaintiff's residence was at Indianola, Iowa, which is north of Osceola. On Sunday, September 4, the appellant had been engaged in making a real estate deal or trade and had driven over the same route, highway No. 65, three or four times in carrying on his negotiations. On Monday morning September 5, he claims to have completed his deal with some parties residing some 20 miles south of Osceola and

started to his home in Indianola. He stopped at an oil station in Leon, a town about 20 miles south of Osceola at about 3:15 a. m., obtained some gasoline, and proceeded north on highway No. 65. In a very few minutes after plaintiff left the oil station at Leon, the station was robbed, the robbers being armed and shooting at the night watch as they left the station, proceeding north toward Osceola on highway No. 65. The sheriff at Leon, in Decatur county, was immediately notified of the robbery and phoned to the defendant-appellee, Tom Stansell, who was the sheriff of Clarke county, residing in Osceola, advising him of the fact of the robbery; that the robbers were proceeding toward Osceola; that they were armed and had shot at the officers at Leon; that they were desperate characters and to watch them, and to go out, stop, arrest, and hold them for the sheriff of Decatur county. Sheriff Stansell called his deputy, who was his son, dressed hurriedly and proceeded to the intersection of highways No. 34 and No. 65. At this junction or intersection there were oil stations on each of the respective four corners, two of which remained open all night. The intersection was well lighted by the lights from these stations, a flood light from one of them, and a large street light over the intersection. Highway No. 65 was paved about 30 feet wide with brick, which commenced two blocks south of the intersection and continued some five blocks north. The street light was of 500 candle power, and would light up the intersection for more than 100 feet in each direction. The testimony is that there was light enough at the intersection at that time so that a man could be recognized for a distance of more than a block. The sheriff and his deputy drove their car about halfway across the pavement at the intersection, effectually blocking the east lane of the highway, and got out of the car and went to the center of the intersection. They heard a car coming from the south some distance away, which from the sound of the motor was being driven about 60 miles an hour. The car had very bright lights and as it came in sight of the sheriff and his deputy, the sheriff, who was standing under the street light so that he could be seen, took off his hat and began waving it, and his deputy used a flashlight in the same way. When the approaching car was about a block south of the intersection, the sheriff cried out loudly: "Hey there, stop, stop". The approaching car cut off the gas and slackened momentarily and then was opened wide open and proceeding directly toward the sheriff at a speed of 50 to 60

miles per hour. The sheriff attempted to step out of the way, but was struck by the side of the car and fell to the pavement, and immediately fired two shots at the car, and his deputy also fired three shots. The car then veered sharply to the left or west side of the pavement to go around the sheriff's car, and proceeded north toward the public square without slackening its speed. The sheriff and his deputy, and a night watch, hurriedly got into their car and started in pursuit, the sheriff declaring to his deputy and the night watch, "Come and get in this car, we want to catch those fellows". A railroad train was blocking the crossing on No. 65, a few blocks north, and the sheriff said that he thought the robber's car had turned in order to go under a subway and get out of town that way, and, in driving his car in that direction, he saw a tail-light of a car standing in front of a hospital. It was the only car in sight at that time. He drove down to where the car was parked, examined it, found both front doors wide open, considerable blood upon the right front seat, and some on the driver's seat, and also upon the rear seat of the car. The sheriff and his two companions then went into the hospital. There is some controversy in the testimony as to what took place in the hospital. The defendant and two of his witnesses testified that the plaintiff, who was being cared for in one of the rooms of the hospital, called out before he had seen the sheriff and said, "Tom, why did you shoot me"? The plaintiff, the doctor, and two of his attendants testified that the sheriff spoke first and said, "Why didn't you stop"? The plaintiff had been shot with a .45 caliber bullet, which passed through the right door of the car, through his right leg, and the bullet was buried in the center of the large bone of the left leg a few inches above the knee. The plaintiff was confined in the hospital for about three weeks, and the testimony shows the injury was severe and permanent. The plaintiff testified that he saw the men at the intersection when he was a block or two south but did not recognize the sheriff, whom he knew well, and thought the men were tourists looking at the road signs. He did not think they were robbers or that he was liable to be held up. The sheriff and other witnesses at the intersection, where the incident occurred, testified that they could not see what kind of a car was approaching and could not see any one in the car, nor how many people there were in the car, as it approached and passed. At the time the sheriff of Decatur county called the defendant and advised him of the robbery, he told him the county

number on the car was 92. The number on plaintiff's car was 91. The sheriff testified that he honestly and in good faith believed that the car which approached and passed him was the robber's car.

The plaintiff in his petition alleged that:

"The defendant, Tom Stansell, committed assault and battery on this plaintiff by shooting him with a revolver while the defendant Stansell was in the exercise of his duties as sheriff of Clarke County, Iowa, and in excess of said duties; that said assault and battery was without just cause; that the defendant Stansell did not have reasonable cause to believe that this plaintiff had committed a felony; that the defendant Stansell used unreasonable force in attempting to stop this plaintiff."

The case was tried upon these allegations and this theory. After both parties had rested and the defendant's motion for a directed verdict had been overruled, the court, in ruling on the motion, had advised counsel for plaintiff "that unless the court is differently advised when he comes to write his instructions, he will instruct the jury that the plaintiff must prove that the shooting was done by the defendant, Tom Stansell, himself. Now, if you can show me any thing, Mr. Watson, that will give me light on that question I will be glad to change my mind", the plaintiff asked leave of the court to amend his petition to conform to the proof, by adding thereto the following:

"That all of the acts complained of in the manner stated were done by the defendant, Tom Stansell, either personally or by M. T. Stansell, who was then and there present, and who was at said time the duly appointed and acting deputy sheriff of Clarke County, Iowa, and who then and there likewise fired upon this plaintiff, and this plaintiff does not know whether the bullet that struck him was fired by the said defendant, Tom Stansell, or by the said M. T. Stansell, but alleges the fact to be that it was fired by one or the other in the manner hereinbefore alleged, and under the circumstances hereinbefore alleged in every particular."

Objection was interposed to the filing of this amendment on the grounds that it was filed too late; that it presented an entirely new and different cause of action; that the case has been tried on the theory set out and alleged in plaintiff's petition; and that it is unfair to withhold such amendment until after the record has been

closed and the new theory now presented has been argued and passed upon by the court. The court in ruling upon the objections to the filing of said amendment said:

"It seems to the court that counsel for the plaintiff had ample time and ample warning from the court as to what might happen on the part of the court with reference to this matter, and surely it is not fair to the court after he has indicated to counsel what he probably would do, for them to wait until he has made his ruling, and then start out on an entirely new theory. For that reason, Mr. Watson, the court now denies your right to file this amendment at this late hour, and you will be given an exception."

The plaintiff then filed a requested instruction which presented this new issue or theory of the case, which instruction was not given by the court.

█ The plaintiff-appellant complains and assigns as error the court's refusal to permit filing of the amendment and the failure to give the requested instruction. We think there is no merit in appellant's contention at this point. It developed early in the testimony that the deputy sheriff was present and took part in the attempt to stop the car which the sheriff thought contained the robbers, but, notwithstanding this information, the appellant elected to continue the making of his record upon the allegations and theory contained in his petition. Had the court permitted the filing of the amendment, it would have required the opening of the case for additional testimony to meet the new theory of the appellant. It would have been necessary for the defendant to show the knowledge of the deputy of the facts and incidents preceding the alleged assault, and whether the sheriff had communicated all of the facts known to him to his deputy prior to the attempt to stop the car and arrest the supposed criminals. And the new question would have been injected in the case as to whether the deputy had reasonable grounds to believe that the car he saw and heard coming from the south contained the criminals, and whether, in attempting to stop the car and arrest the criminals, or to assist in doing so, he acted as a reasonable and prudent person, and used no more force than apparently necessary under the circumstances in attempting, or assisting, to stop the car and arrest the robbers.

The matter of allowing amendments is always within the sound discretion of the trial court. Emerson v. Converse, 106 Iowa 330,

76 N. W. 705; Roberdee v. Bierkamp, 160 Iowa 687, 142 N. W. 217; Fairley v. Falcon, 204 Iowa 290, 214 N. W. 538; Lockie v. Baker's Estate, 208 Iowa 1293, 227 N. W. 160. No good reason is shown why this new issue should not have been tendered at an earlier date. The right to amend is never absolute. Coming as this amendment did, after the close of the testimony and after the motion to direct a verdict, there was no error or abuse of discretion in not permitting it to be filed. In the Roberdee case, supra, we said:

"The allowance or refusal of amendments is a matter which is largely within the sound discretion of the trial court. The advisability of allowing it is a question of fact, which is to be determined by the trial court, and the determination will not be reviewed by this court except in cases showing a gross abuse of its discretion. * * * But the presumption is always against such abuse. The discretion lodged in the court is a sound, legal discretion, to be exercised in the light of all the facts and circumstances of the particular case."

The preceding discussion disposes of the alleged error in refusing to give the requested instruction. As to whether the sheriff would be liable, under this record, for the independent acts of his deputy in making the assault, we do not find it necessary to determine, for the reason that the case was not presented or tried upon that theory. The defendant was not advised of any such claim or theory until the offer of the amendment, and had no opportunity to meet the issue.

The appellant also complains that the court erred in submitting to the jury the question as to whether or not the defendant-appellee had reasonable cause to believe that the plaintiff's car contained the persons who committed the robbery, for the reason that as a matter of law, under the record, the defendant did not have reasonable cause to so believe. With this contention we cannot agree. Without again reciting the facts, the preceding incidents of which the sheriff appellee had been advised, the actions and conduct of the appellant in the manner of driving his car and his approach to the intersection where the assault occurred, would warrant any reasonable and prudent person to conclude that the car contained the robbers. And the sheriff would have been derelict in his duty had he not made every effort to stop the car and arrest the occupants thereof. The appellant testified that he did not think the people

who were trying to stop him were trying to rob him; however, he did slacken his speed, although more than half of the highway in front of him was blocked by the sheriff's car. He knew the sheriff well; he could have recognized him, as the testimony shows, a block and one-half from where the assault took place. He was driving 55 or 60 miles an hour and drove directly toward the sheriff, who was in the center of the highway, under the bright lights, waving his hat and shouting: "Stop, stop, stop." There is no doubt under this record, that as to whether or not the defendant had cause to believe that the car approaching contained the robbers, and whether or not he acted as a reasonable and prudent man would act under the circumstances, and as to whether or not he used more force than was apparently necessary to stop the car, were clearly questions for the jury. Goold v. Saunders, 196 Iowa 380, 194 N. W. 227; Love v. Bass, 145 Tenn. 522, 238 S. W. 94. The facts in the last cited case are very similar to the facts in the case at bar, and the court in that case said:

"It is argued for the defendants that deceased could not have been otherwise stopped, under the circumstances of the case. The plaintiff insists to the contrary. We forbear a discussion of the evidence, since we think this question should be settled by a jury. * * * Whether or not there was a reasonable necessity for the killing, and the reasonableness of the grounds upon which the officer acted in killing, are questions for the jury."

To the same effect, see Commonwealth v. Bollinger, 198 Ky. 646, 249 S. W. 786; Grau v. Forge, 183 Ky. 521, 209 S. W. 369, 3 A. L. R. 642.

A further complaint is made by the appellant that evidence was admitted tending to prove that the defendant was attempting to arrest the plaintiff for a crime committed in his presence, and that he was not guilty of any crime that would warrant the admission of such evidence. The answer to this is that such testimony was not prejudicial, and that the court did not submit such question to the jury. The only defense submitted to the jury was the defendant's claim that a robbery had been committed; that he had good cause to believe the occupants of plaintiff's car were the guilty parties; and that he used no more force than was reasonably necessary in attempting to make an arrest.

Appellant also complains that the court erred in overrul-

ing his motion for a new trial on the ground of improper argument by the defendant's counsel. While counsel may have approached the border line in their argument, we cannot say that there was anything improper, under this record, discussed by counsel. Counsel have the right to draw their own conclusions from the testimony even though their logic may be at fault, or the opinions expressed and conclusions drawn may be unjust, so long as they do not go outside of the record and appeal to passion and prejudice rather than to reason. Moore v. Railway Co., 151 Iowa 353, 131 N. W. 30; Barr v. Clinton Bridge Works, 179 Iowa 702, 161 N. W. 695; Haman v. Preston, 186 Iowa 1292, 173 N. W. 894.

Complaint is also made and error alleged by reason of the exclusion by the trial court of some rebuttal testimony sought to be introduced by the appellant. We find no error here. The evidence, if admissible at all, was a part of the appellant's case in chief. It was not rebuttal. In most part it was but corroboration of appellant's testimony in chief. We discover no error in the record. The verdict is amply sustained by the evidence. The instructions of the court fairly and properly submitted the questions in issue to the jury for its determination. The jury found on such issues for the defendant. With this result we are satisfied, and an affirmance necessarily follows.—Affirmed.

ALBERT, C. J., and KINDIG, EVANS, STEVENS, MITCHELL, and KINTZINGER, JJ., concur.