Esther L. JOHNSTON, Administrator of the Estate of Donald J. Johnston, Deceased, Plaintiff,

v.

PERCY CONSTRUCTION, INC., and Salsbury Laboratories, Defendants.

SALSBURY LABORATORIES, Third Party Plaintiff, Appellant,

v.

Gene L. PAYNE, d/b/a Payne Plumbing and Heating, Third Party Defendant, Appellee.

Gerald KLUNDER, Plaintiff,

v.

PERCY CONSTRUCTION, INC., and Salsbury Laboratories, Defendants.

SALSBURY LABORATORIES, Third Party Plaintiff, Appellant,

v.

Gene L. PAYNE, d/b/a Payne Plumbing and Heating, Third Party Defendant, Appellee.

No. 2–58752.

Supreme Court of Iowa.

Oct. 19, 1977.

Lindeman & Yagla, Waterloo, for appellant.

Laird, Burington, Bovard & Heiny, Mason City, for appellee.

Heard by MOORE, C. J., and RAWLINGS, REES, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

Third party plaintiff Salsbury Laboratories appeals judgment dismissing two consolidated actions in which it sought indemnity from third party defendant Gene L. Payne, d/b/a Payne Plumbing and Heating. Salsbury contends the trial court erred in sustaining Payne's motions to dismiss and in overruling its motions for leave to amend its petitions. We reverse and remand.

These actions arose from a construction accident in December 1966 in which Donald J. Johnston was killed and Gerald Klunder was injured. Salsbury acted as its own general contractor in erecting a building on land which it owned near Charles City. Payne was hired to do plumbing. Percy Construction, Inc., received a contract to do steel and masonry construction work. Johnston and Klunder were Payne employees. The accident occurred when Klunder slipped on a loose steel grating on the partially completed second floor of the building and fell to the first floor. The grating also fell, striking Johnston and causing the injuries which led to his death.

Johnston's administrator commenced a wrongful death action against Salsbury and Percy in February 1968; Klunder sued the same defendants for personal injury damages in March 1968. Later that year, after the cases were at issue, Salsbury impleaded Payne as a third party defendant in each action. In its third party petitions Salsbury alleged Payne had breached an implied contract to perform work in a good and workmanlike manner and to use due care to assure its employees a safe place to work. On this basis Salsbury prayed for indemnity from Payne in each case "in an amount that verdict and judgment shall be rendered in favor of plaintiff herein and against the said defendant, third party plaintiff, if any * * *."

After considerable skirmishing on the pleadings Payne filed motions in December 1968 to dismiss each third party petition and alternative motions for separate trial on them. One of the grounds of the motions to dismiss was an allegation that the third party petition did not state a claim upon which relief could be granted. The trial court overruled the motions to dismiss and sustained the motions for separate trial of the third party actions. Payne filed his answer to the third party petitions.

Salsbury and Percy settled with the Johnston estate in 1969, as a result of which the administrator dismissed her petition with prejudice in June 1969. Salsbury and Percy settled with Klunder in 1972, and he dismissed his petition with prejudice in May 1972. Counsel for Payne had appeared as co-counsel for each plaintiff and is not shown to have withdrawn before the petitions were dismissed. In any event, Payne acknowledges he had knowledge of the settlements when they occurred.

In 1974 Salsbury filed a cross-petition against Percy seeking contribution in the Klunder action. Percy filed a special appearance, and Salsbury settled with Percy before it was ruled on. Salsbury dismissed its cross-petition against Percy in April 1975.

The clerk of court sent dismissal notices to the parties under rule 215.1, Rules of Civil Procedure, each year from 1969 through 1974. On each occasion until the last one Payne consented to orders continuing the cases. Payne refused to consent to a continuance beyond January 1, 1975, but upon Salsbury's motion the cases were ordered continued until December 31, 1975. Salsbury filed certificates of readiness for trial in May 1975, and at Salsbury's request the cases were consolidated for trial.

On August 5, 1975, Payne filed motions to dismiss each case, alleging in part that because the original plaintiffs had dismissed their actions no verdict or judgment would be rendered upon which Salsbury could obtain indemnity. Salsbury resisted the motions to dismiss and separately moved for leave to amend the third party petitions to allege the facts surrounding the settlements, aver their reasonableness, and pray for indemnity on the settlements rather than on judgments.

At a pretrial conference on August 7, 1975, the trial court noted the actions were not ready for trial because the motions required ruling and discovery was not complete.

The trial court subsequently sustained the motions to dismiss on the ground the third party petitions did not state a claim upon which relief could be granted and, in the *Klunder* case, on an additional ground which Payne now concedes was not meritorious. The court overruled Salsbury's motion for leave to amend on grounds of laches, the bar of the statute of limitations and prejudice to Payne from introduction of the new issue relating to reasonableness of the settlements.

The questions in this appeal are whether the trial court erred in sustaining the motions to dismiss and in overruling Salsbury's motions for leave to amend.

■ I. *The motions to dismiss.* Under rule 104(b), R.C.P., a motion to dismiss a pleading for failure to state a claim on which any relief can be granted must be "filed before answer". *Riediger v. Marrland Development Corp.*, 253 N.W.2d 915, 916 (Iowa 1977). Other procedural devices are available for disposition of matters after answer but were not employed here. Payne's August 1975 motions to dismiss were untimely and therefore should have been overruled.

We do not decide whether we would reach the same conclusion if we were to reach the merits of the motions. On that subject see *Newton v. City of Grundy Center*, 246 Iowa 916, 919, 70 N.W.2d 162, 164 (1955); *Case v. Blood*, 71 Iowa 632, 634, 33 N.W. 144, 145 (1887), and *Riediger*, 253 N.W.2d at 916–917.

The trial court erred in sustaining the motions to dismiss.

II. *The motions for leave to amend.* Salsbury alternatively contends it did not need to amend its third party petitions in order to seek indemnity on the settlement, but, if it did have to amend, the trial court abused its discretion in overruling its motions seeking leave to do so.

■ It is true that the settlements with plaintiffs did not defeat Salsbury's right to claim indemnity from Payne. *Buchhop v. General Growth Properties, Etc.*, 235 N.W.2d 301, 302–303 (Iowa 1975). However, because of the settlements it was necessary for Salsbury to amend its third party petitions to state claims for indemnity based on the changed circumstances. A party seeking indemnity for amounts paid in settlement "must plead and prove three basic elements: (1) it was liable to the injured party, (2) the settlement was reasonable and (3) the facts are such as to give rise to a duty on the part of the indemnitor to indemnify the indemnitee." *Ke-Wash Company v. Stauffer Chemical Company*, 177 N.W.2d 5, 11 (Iowa 1970). By filing the motions to dismiss Payne demonstrated he was not willing to try the new issues by consent.

■ The present situation is within rule 88, R.C.P., governing amendments generally, and rule 90, R.C.P., which at the time involved here provided in pertinent part:

A party may file a supplemental pleading alleging facts material to the case which have happened subsequent to the commencement of the action, or come to his knowledge since his prior pleading.

When a responsive pleading has been filed, leave of court is required for amendments. The purpose is to give the adverse party a right to object to amendments which might affect trial preparation. *West v. Hawker*, 237 N.W.2d 802, 807 (Iowa 1976). The decision is a matter for exercise of trial court discretion. Thus, in determining whether the trial court erred in overruling Salsbury's motions for leave to amend, we must determine whether the rulings were an abuse of discretion.

■ We are reluctant to find an abuse of discretion in a trial court ruling granting or denying a party leave to amend. See *Webber v. Larimer Hardware Co.*, 234 Iowa 1381, 1389, 15 N.W.2d 286, 290 (1944). This is true even though allowance of an amendment is the general rule and

denial the exception. See *Stom v. City of Council Bluffs*, 189 N.W.2d 522, 529 (Iowa 1971). We are especially unlikely to find an abuse of discretion when reviewing denial of an amendment proposed on the eve of trial or during trial. *Farmers Insurance Group v. Merryweather*, 214 N.W.2d 184, 188 (Iowa 1974); *Trask v. Gibbs*, 200 N.W.2d 565, 568–569 (Iowa 1972).

■■■■■ Nevertheless in exceptional situations denial of an amendment may constitute an abuse of fair discretion. See *Laverty v. Hawkeye Security Ins. Co.*, 258 Iowa 717, 725, 140 N.W.2d 83, 88 (1966); *Mooney v. Nagel*, 251 Iowa 1052, 1056, 103 N.W.2d 76, 80 (1960); *Little v. Pottawattamie County*, 127 Iowa 376, 101 N.W. 752 (1904), overruled on other grounds, *Dan Dugan Transport Co. v. Worth County*, 243 N.W.2d 655 (Iowa 1976); *Seevers, Adm'r v. Hamilton et ux.*, 11 Iowa 66 (1860). The time of the amendment is not the determining factor in reviewing the trial court's ruling. More important is whether it substantially changes the issues. *Smith v. Village Enterprises, Inc.*, 208 N.W.2d 35, 37 (Iowa 1973). Moreover, the discretion lodged in the trial court is a legal discretion, to be exercised in the light of all the circumstances in a particular case. *Lawyer v. Stansell*, 217 Iowa 111, 117, 250 N.W. 887, 889 (1933). Therefore the bounds of fair discretion are exceeded if the ruling lacks a sound legal basis.

We should not find an abuse of discretion in the present case unless the trial court erred in denying the amendments on grounds of laches, running of the period of limitations, and prejudice to Payne from injecting the issue of reasonableness of the settlements into the cases.

■■■■■ Laches may be found when a party's unexcused delay in taking some legal action causes harm to an adverse party. It is an equitable doctrine. *Davenport Osteopathic Hospital Ass'n v. Hospital Service, Inc.*, 261 Iowa 247, 261, 154 N.W.2d 153, 162 (1967). It is not available to a party who has caused or acquiesced in the delay. Furthermore, mere delay which does not work disadvantage or harm to others does not constitute laches. *Shives v. Niewoehner*, 191 N.W.2d 633, 637 (Iowa 1971). Here Payne caused some of the delay and consented to all but the last continuance of the cases. He obtained the order for separate trial of the third party claims and knew of the settlements of the underlying controversies when they occurred. The proposed amendments could not have come as a surprise to Payne nor could the new issues have been unexpected. In these circumstances, the trial court erred in holding Salsbury's amendments were barred by laches.

■■■■■ The statute of limitations relied on by Payne and the trial court is not identified in the record. We need not decide what period of limitations was applicable here to Salsbury's claims because the proposed amendments did not present a statute of limitations issue. Amendments do not raise a statute of limitations problem unless they introduce a new cause of action. *Swartz v. Bly*, 183 N.W.2d 733 (Iowa 1971). The amendments would not do so here. The duty to indemnify would continue to rest on allegations of implied contract. The proposed amendments affected the measure of recovery rather than the theory of recovery. See *Johnston v. Federal Land Bank*, 226 Iowa 496, 284 N.W. 393 (1939). The statute of limitations ground relied on by the trial court was untenable.

■■■■■ Finally, although the amendments would inject the issue of reasonableness of the settlements into the litigation, we do not believe the mere delay in tendering the amendments can be said to have harmed Payne. The nature of the amendments could not have surprised Payne in view of his knowledge of the settlements when they occurred. The cases were not ready for trial in any event because discovery was incomplete. The amendments would make no change in Salsbury's theory of recovery and increased its burden on the measure of recovery.

Under this record, the trial court's rulings on Salsbury's motions for leave to amend lack a sound legal basis. We hold the court

abused its discretion in overruling the motions.

REVERSED AND REMANDED.