**Clarence FREEMAN, Appellee,**

v.

**BONNES TRUCKING, INC., Oran Bonnes, and Guardian Life Insurance Company, Appellants.**

No. 68603.

Supreme Court of Iowa.

Aug. 17, 1983.

Rehearing Denied Oct. 13, 1983.

Raymond E. Pogge of Pogge, Root & Steege, Council Bluffs, for appellants Bonnes Trucking and Bonnes.

Gregory G. Barnsten of Smith, Peterson, Beckman & Willson, Council Bluffs, for appellant Guardian.

Dennis M. Gray and Jan Stansberry Fuller of Peters Law Firm, P.C., Council Bluffs, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McGIVERIN, and WOLLE, JJ.

UHLENHOPP, Justice.

This law case tried to the court involves the requirements for termination of a group medical insurance policy for nonpayment of premiums.

Viewing the evidence in the light most favorable to the judgment for plaintiff Clarence Freeman, the court could find the facts to be as follows. Defendant Oran Bonnes (Bonnes) was president and sole stockholder of defendant Bonnes Trucking, Inc. (Bonnes Trucking). As one of their benefits, employees of Bonnes Trucking received medical expense insurance coverage under a group policy Bonnes Trucking maintained with defendant Guardian Life Insurance Company. Employees could also obtain coverage for dependents by paying half the premium for them through payroll deductions, with Bonnes Trucking paying the other half.

Freeman was one of these covered employees. He also had coverage for his wife, and Bonnes Trucking deducted half of the premium for her from his wages. Bonnes Trucking held the master policy and each employee including Freeman received a "Certificate of Coverage" explaining the insurance benefits of the employees and dependents. Guardian's policy also provided life and disability insurance, but those coverages are not involved here.

In the fall of 1979, Bonnes Trucking had insufficient income to pay all its bills. It therefore failed to pay monthly premiums to Guardian, including the amounts it withheld from Freeman's wages for his wife's coverage. Guardian purported to terminate the policy for nonpayment of premiums as of November 19, 1979, by notifying Bonnes Trucking. Neither Guardian, Bonnes Trucking, nor Bonnes notified Freeman of the termination.

In January 1980, Freeman became ill with a breathing problem. Bonnes adroitly left Freeman with the impression that he had insurance, and Brenda Lewis, the office secretary at Bonnes Trucking, assured Freeman that his insurance was in effect. Freeman underwent surgery and also received post-surgery care and treatment. In addition, his wife had medical expenses from a broken elbow as a result of a fall. In all, these medical expenses came to $16,522.06 (allowing for deductibles). Guardian refused to pay these expenses, claiming that the policy had been cancelled and had expired.

Freeman brought the present action against Bonnes Trucking and Bonnes for $16,522.06 together with $25,000 for punitive damages for fraudulently leading him to believe that he had insurance and withholding information that the policy had been terminated. Through procedural steps in the case, Freeman also sued Guardian for $16,522.06. The trial court awarded him $16,522.06 jointly from Bonnes Trucking, Bonnes, and Guardian, plus $25,000 from Bonnes Trucking and Bonnes as punitive

damages. All three defendants appealed. We first consider Guardian's propositions, and then the propositions of Bonnes Trucking and Bonnes.

I. *Cancellation and expiration.* The heart of Guardian's appeal relates to the effect of the failure to notify Freeman of the termination of the policy. Because he was not notified, Freeman had no reason to seek employment with a truck line which did provide insurance, or to take action, alone or with his co-workers, seeking to induce Bonnes Trucking to reinstate the insurance.

A. As to *cancellation,* we need not decide whether, as a matter of Iowa common law, a group insurer must notify the group members of policy cancellation for nonpayment of premiums by the employer. Hence we do not consider the common-law decisions from elsewhere on that subject. *But see Hendrix v. Republic National Life Insurance Co.,* 270 Ark. 955, 958, 606 S.W.2d 601, 602 (Ark.1980) ("We might even find, were we at liberty to do so, some equitable duty on the part of the insurer to notify employees participating in the group policy when there is such a lapse resulting from the employer's failure to pay."); *Elfstrom v. New York Life Insurance Co.,* 67 Cal.2d 503, 512, 63 Cal.Rptr. 35, 41, 432 P.2d 731, 737 (1967) ("The reasoning underlying these decisions [holding employer is agent for insurer] is that the employer carries out the functions which the insurer necessarily would perform in other types of insurance and thereby confers a substantial benefit on the insurer, and that since the individual employee has no knowledge of or control over the administrative acts performed by the employer, it would be inequitable to charge him with the employer's errors."). In this jurisdiction, the matter is covered by section 515.80 of the Iowa Code (1979):

No policy or contract of insurance provided for in this chapter shall be forfeited or suspended for nonpayment of any premium, assessment, or installment provided for in the policy, or in any note or contract for the payment thereof, unless within thirty days prior to, or on or after the maturity thereof, the company shall serve notice in writing upon the insured that such premium, assessment, or installment is due or to become due, stating the amount, and the amount necessary to pay the customary short rates, up to the time fixed in the notice when the insurance will be suspended, forfeited, or canceled, which shall not be less than thirty days after service of such notice, which may be made in person, or by mailing in a certified mail letter addressed to the insured at his post office as given in or upon the policy, and no suspension, forfeiture, or cancellation shall take effect until the time thus fixed and except as herein provided, anything in the policy, application, or a separate agreement to the contrary notwithstanding.

Guardian argues that section 515.80 does not apply to group insurance. The Iowa Code contains forty chapters relating to insurance, a number of which relate to specific kinds of insurance. Three of the chapters, however, contain general requirements. Chapter 508 relates to life insurance companies generally and chapter 511 contains various other provisions relating to life insurance companies. Correspondingly, chapter 515 relates to non-life companies generally and also contains general provisions relating to such companies. The other chapters contain additional provisions relating to specific kinds of life and non-life insurance, such as group insurance (chapter 509), fraternal benefit societies (512), mutual hospital service (514), and accident and health insurance (514A).

The part of Guardian's policy involved here is non-life—medical expense insurance. The specific chapter of the Code on group insurance is 509. The express provisions of chapter 509 control, of course, over any contrary provisions of general chapter 515. But as to group insurance questions which are not covered by an express provision in chapter 509, the problem becomes one of

legislative intent: whether the General Assembly intended the provisions in general chapter 515 to apply—in this case, section 515.80.

Chapter 509 on group insurance contains no provision comparable to section 515.80; hence no express conflict exists. Guardian argues, however, that the language of section 515.80 demonstrates the section does not apply to group insurance. That section begins, "No policy or contract of insurance provided for in this chapter. . . ." What is "provided for" in chapter 515? Section 515.1 provides that "Corporations formed for the purpose of insurance, *other than life insurance, shall be governed by the provisions of chapter 491* [general corporation chapter], *except as modified by the provisions of this chapter.*" (Emphasis added.)

A provision of chapter 509 indicates that section 515.80 applies to group medical expense insurance. Section 509.2 lists the provisions which are part of a group life policy. This section states that "the standard provisions required for individual life insurance policies shall not apply to group life insurance policies. . . ." It also expressly exempts life insurers from including "the same nonforfeiture provisions as are required for individual life insurance policies," and it expressly gives policyholders a grace period of thirty-one days for payment of premiums except the first one. Section 509.3, on the other hand, deals with group accident and health policies such as we have here. *It contains no such exemptions from the standard requirements of nonlife insurance.*

█ Section 515.80 provides that the forfeiture notice shall be served "upon the insured." Guardian argues that Bonnes Trucking was the insured, and that notice was served upon it. But Bonnes Trucking, under the policy, was the policyholder. Iowa Code (1983) § 509.1(1) ("employer or trustee shall be deemed the policyholder"), § 509.3(2) ("company will issue to the policyholder for delivery to each person insured under such policy an individual certificate"). Bonnes Trucking would receive no

insurance proceeds if an employee had medical expense. The employee would receive the proceeds. The employee's expense for injury or illness was the hazard insured against. Guardian's Certificate of Coverage given to Freeman begins by stating "that the *employee* named below [Freeman] is entitled to the benefits described in this Certificate. . . ." (Emphasis added.) The second page begins, "*Your* insurance under the group plan is effective on the date shown on the Certificate of Coverage. . . ." (Emphasis added.) In defining a dependent, the certificate names certain relatives but excludes "any such person *who is insured* as an *Employee*. . . ." (Emphasis added.) This part of the certificate also states, "*'Insured Dependent'* refers to any Eligible Dependent on behalf of whom *you have become insured.*" (Second emphasis added.) Similar phrases exist throughout the certificate, demonstrating that the employee has insurance and is in fact the insured. *See Tabb v. Louisiana Health Services & Indemnity Co.,* 361 So.2d 862, 863 (La.1978) ("The insurance code defines many kinds of insurance but not all kinds. This Blue Cross policy would be classified as 'miscellaneous' under R.S. 22:6(14) *and the general provisions of the insurance code would govern, including the provisions of R.S. 22:636 requiring written notice to the insured for cancellation. . . .* Benefits are to be provided to the 'Employees of the Employer.' *The employer is not the insured; the employees are. They, alone, receive the benefits.*" Emphasis added.), *overruled on other grounds, Rudloff v. Louisiana Health Services and Indemnity Co.,* 385 So.2d 767 (1980).

Guardian contends that other language of section 515.80 shows the section was not intended to apply to group insurance: a notice must recite that the premium is due, "stating the amount, and the amount necessary to pay the customary short rates," and a notice by mail must be "addressed to the insured at his post office as given in or upon the policy." Some of this language is a holdover from the original section, which

applied only to fire insurance policies. Iowa Acts (1880) ch. 210, § 2. Later the section was changed to apply to "insurance provided for in this chapter.␣.␣.␣." Iowa Code (1897) § 1727. At that time chapter 515 (title IX, chapter 4, in the Code of 1897) had been broadened to include other hazards: fidelity, safekeeping, livestock, personal injury, and boiler insurance. *Id.* § 1709. Still later and at present, the chapter was broadened further to include inter alia the hazard we have here. Iowa Code (1983) § 515.48(5)(a) ("hospital, medical, surgical and sick care benefits"). With this expansion of chapter 515, we do not believe that the language from the original section establishes the inapplicability of the section to the present insurance.

■ As to the address of the insured given "in or upon the policy," section 509.-3(2) of the Iowa Code requires that a group insurer issue individual certificates for delivery by the employer to the insureds. The master policy and the certificate are construed together. 44 Am.Jur.2d *Insurance* § 1844 (1982); 44 C.J.S. *Insurance* § 299, at 1202–04 (1945). Considering that section 515.80 was enacted before the day of accident and health insurance and has since been broadened, we believe that "in or upon the policy" at this day should include in or upon the certificate which the insurer issues for the insured, and that the insurer can require insureds to give their addresses for placement on the certificates and on the insurer's copies of them.

Guardian also argues that Freeman and the other drivers did not contribute to the cost of the insurance; Bonnes Trucking provided the insurance as a gratuity. Hence the General Assembly must not have intended that the employees should receive notice of cancellation.

■ Putting aside the payroll deduction for the coverage of Freeman's wife, we believe the suggestion that Bonnes Trucking provided the insurance as a charitable act is a myth. The insurance clause in the employment contract was part of the employee's compensation for his services, just as surely as if the employer had paid the employee the amount of the premium in cash and the employee himself had sent the premium to Guardian. As stated in Note, *Group Insurance: Notification of Termination of Coverage,* 40 S.Cal.L.Rev. 697, 699 (1967):

> Yet even in non-contributory policies the employee may be viewed as supplying the premiums—at least indirectly. The non-contributory plan is a benefit that employers offer in lieu of salary. The insurance premiums paid by the employer substitute for salary; the economic transaction is the same as if the employee were paid the premium amount and then purchased his own insurance protection. In some instances similar employer payments to third parties have been held to be "wages." Thus, it seems the employee might be considered a party—and hence entitled to notification—regardless of whether the policy was contributory.

*See also* Note, *Cancellation of Group Insurance Policy by Employer Without Consent of Employee,* 49 Yale L.J. 585, 589–90 (1940) ("On the non-contributory policy, there would seem to be consideration in the fact that the insurance given is partial compensation for services—as is emphasized by the provision for an increase in insurance with each additional year of employment.").

■ We agree that as a matter of common law Guardian had a legal duty to give Bonnes Trucking advance notice of cancellation for nonpayment of premiums, because Bonnes Trucking had the responsibility of actually remitting the premiums. See 1 Appleman, *Insurance Law & Practice* § 43.25, at 102–03 (1981) (employer's responsibility of attending to the policy). But this case of a financially unstable employer and an employee going forward with his work in the belief he has medical insurance constitutes a graphic illustration of the wisdom of applying section 515.80 to group members so that they will obtain information directly from the insurer itself should the insurance be cancelled. We hold that Guardian's attempted cancellation of Freeman's insurance without notice to him was of no effect.

■ B. As to *expiration* of the policy, Guardian relies on *Travelers Indemnity Co. v. Fields,* 317 N.W.2d 176 (Iowa 1982); *Hensley v. Aetna Casualty & Surety Co.,* 200 N.W.2d 552 (Iowa 1972); and *Hoefler v. Farm & City Insurance Co.,* 193 N.W.2d 538 (Iowa 1972). In each of those three cases the policy was for a specified time with right to renew on paying the renewal premium, the insurer sent the insured notice of premium due, and the insured did not pay the premium and thus renew the policy. Hence the policy simply expired. *Cf. Gibson v. Milwaukee Mutual Insurance Co.,* 265 N.W.2d 742 (Iowa 1978) (policy not for fixed term).

Guardian analogizes the three cases to the present one, and states in its brief at page 24:

[R]eferring to trial Exhibit No. 31 [master policy], it is provided therein on the very first page that the anniversary date of this policy shall be December 15 of each year beginning in 1979, and further, that the company has the right to decline to renew the policy on any anniversary subject to the provisions of the policy, which provide, in pertinent part, for the automatic termination at the expiration of the 31-day grace period to begin upon the date the last missed premium was due.

Upon close examination of Guardian's master policy, we find that of the four cited decisions this case most closely resembles *Gibson.* Of the policy in *Gibson* we stated in *Fields,* 317 N.W.2d at 184: "We held, however, that the policy was not for a set term; it continued indefinitely with premiums payable periodically and with cancellation permitted the insurer upon nonpayment of premiums." While the present policy is not precisely the same as the one in *Gibson,* we apply the *Gibson* rationale and hold that section 515.80 applies. *See also Thames v. Piedmont Life Insurance Co.,* 128 Ga.App. 630, 197 S.E.2d 412 (1973). In so holding we also take two distinguishing factors into consideration. In *Fields, Hensley,* and *Hoefler* the premium notice went directly to the insured, who then failed to pay. In addition, the Certificate of Coverage which Bonnes Trucking employees received did not deal with the subject of nonpayment of premiums. Even without those factors, however, section 515.80 would apply. This policy did not "expire" under the *Fields-Hensley-Hoefler* line of cases.

■ II. *Amendment to pleading.* At the conclusion of the evidence at trial, Guardian moved to amend its pleading by asking contribution and indemnity from Bonnes Trucking and Bonnes. Allowance or disallowance of an amendment at that late date, injecting a new issue for Bonnes Trucking and Bonnes to meet, was largely discretionary with the trial court in the interests of justice. *Johnston v. Percy Construction Co.,* 258 N.W.2d 366, 370 (Iowa 1977); *B & B Asphalt Co. Inc. v. T.S. McShane Co., Inc.,* 242 N.W.2d 279, 284 (Iowa 1976). While allowance of amendment is the rule and disallowance the exception, we cannot say the trial court abused its discretion here.

■ III. *Allegedly erroneous findings and conclusions.* Guardian devotes several propositions in its brief to findings and conclusions of the trial court which it argues are erroneous: finding that Freeman and spouse could have obtained individual insurance from Guardian or elsewhere; that Guardian was aware of the names and addresses of Bonnes Trucking employees; that the Certificate of Coverage defines "insured" to include the employee; and that employees had rights directly from Guardian including options for coverage following termination and for conversion.

We turn the decision against Guardian on facts and principles independent of these findings and conclusions. First, since cancellation or expiration of the insurance did not occur for want of compliance with section 515.80, whether Freeman and spouse could have obtained other coverage is irrelevant as to Guardian. Second, since Guardian had a duty to comply with section 515.80 by notifying the insured employees of cancellation, it had a duty to maintain the necessary records to do so; Guardian does

appear to have maintained records of employees in order to be able to compute premiums. Third, although the Certificate of Coverage does not define an employee as an insured in that language, a reading of the certificate leaves no doubt that the employees are the persons insured. Finally, we hold that employees do have rights directly from Guardian; whether they had options for coverage and conversion following a legal termination of the insurance is not necessary for Guardian's liability, as a legal termination did not occur.

We turn to the propositions of Bonnes Trucking and Bonnes.

■ IV. *Fraud by Bonnes Trucking and Bonnes.* Freeman's recovery from Bonnes Trucking and Bonnes is predicated on fraud by them. Fraud of Bonnes and Brenda Lewis, the secretary for Bonnes Trucking, would implicate Bonnes Trucking under *respondent superior,* and Bonnes would not be immune from personal liability for fraud he himself committed merely because he was an officer of a corporation. *Briggs Transportation Co., Inc. v. Starr Sales Co., Inc.,* 262 N.W.2d 805, 808 (Iowa 1978).

■ The evidence abundantly supports the finding of fraud on the part of Bonnes and Lewis. Initially Bonnes told Freeman that he would have medical insurance coverage. Payroll deductions were made for coverage of Freeman's wife. Bonnes Trucking failed to pay premiums and received notice of cancellation. Bonnes Trucking did not notify Freeman of the cancellation but on the contrary, continued to deduct from his wages for his wife's coverage. This money was used for other obligations of Bonnes Trucking. Far from leveling with Freeman about the true situation, Bonnes falsely led Freeman to believe he was insured. Even at trial, Bonnes was evasive in his answers and difficult to pin down. His claim that he was confused as to whether the policy was in force is belied by the unequivocal notice (and letters) from Guardian that the insurance was cancelled for nonpayment of premiums. If Bonnes' conduct is not direct evidence of fraud upon Freeman, it is evidence from which a strong inference of fraud arises. Lewis expressly and falsely assured Freeman that he had insurance. Freeman incurred large medical expenses on the strength of all these misrepresentations. The trial court was well within the evidence in finding that fraud existed.

■ V. *Extent of liability.* At some point in time Freeman ceased to be an employee. This appears to have been after his surgery, when he was disabled and unable to work. His remaining medical expenses grew out of his illness that initially occurred when he was a Bonnes Trucking employee.

We have examined Guardian's policy. It covers expenses arising from the extended illness under those circumstances. Indeed, Guardian filed an answer to that effect in response to a request for admissions, and rested its defense instead on cancellation and expiration of the policy.

Bonnes Trucking and Bonnes, however, insist that their liability would in no event extend to expenses incurred beyond January 19, 1980, which they put as the date Freeman ceased employment. But the action against Bonnes Trucking and Bonnes is predicated on fraud, and we are committed to the benefit-of-the-bargain rule in such cases. *Holcomb v. Hoffschneider,* 297 N.W.2d 210, 212 (Iowa 1980); *Syester v. Banta,* 257 Iowa 613, 626, 133 N.W.2d 666, 674 (1965). *See Restatement (Second) of Torts* § 549(2) (1977). Thus Freeman's damages for fraud against Bonnes Trucking and Bonnes include the extended medical expenses during disability growing out of the initial illness, in accordance with the policy.

■ VI. *Punitive damages.* Bonnes Trucking and Bonnes argue finally that the proof of fraud is insufficient for punitive damages. We have already upheld the finding that Bonnes and Lewis were guilty of fraudulent conduct. Punitive damages are justified where a defendant acts maliciously. The malice may be actual (express), such as personal spite, hatred, or

ill will, or it may be legal (implied), as where the defendant acts illegally or improperly with wilfull or reckless disregard for another's rights. *Claude v. Weaver Construction Co.,* 261 Iowa 1225, 1231, 158 N.W.2d 139, 144 (1968); *Robinson v. Home Fire & Marine Insurance Co.,* 244 Iowa 1084, 1093, 59 N.W.2d 776, 782 (1953). The fraud of Bonnes and Lewis was not merely a kind of "constructive" fraud; it was downright deceit committed with reckless disregard of Freeman's rights. The trial court might have denied punitive damages but we cannot say it abused its discretion in allowing them.

█ These defendants also argue that punitive damages of $25,000 are excessive. The award is very generous but again we cannot say the court abused its discretion. *Grefe v. Ross,* 231 N.W.2d 863, 868 (1975).

VII. Bonnes Trucking and Bonnes do not argue that they are not liable for damages because Guardian is liable for the medical expenses for want of statutory notice to Freeman, and we do not consider that question.

AFFIRMED.

All Justices concur except WOLLE, J., who concurs specially.

WOLLE, Justice (concurring specially).

I concur in the result reached by the majority and in the reasoning of all of the majority opinion except a portion of division IA. I disagree with the court's interpretation of section 515.80. I believe that statute required only that the group insurer Guardian serve notice of cancellation for nonpayment of premium upon the premium-paying and policy-holding employer Bonnes Trucking with whom Guardian had contracted, not on the Freemans and other persons covered by the group policy. I agree, however, that judgment against Guardian should be affirmed; the form, content and timing of Guardian's written notices to Bonnes Trucking did not comport with the statutory notice requirements of section 515.80.

The trial court found that on November 19, 1979, the group policy was cancelled by Guardian and that notice of the cancellation was given to Bonnes Trucking, though not to Freeman. The uncontradicted evidence conclusively establishes the contrary with respect to Bonnes Trucking. The written notices were deficient in several respects. The record discloses that Guardian sent Bonnes Trucking written notices concerning policy cancellation or lapse on November 20 and December 19, 1979, and on February 8, 1980. The November 20 notice provided that if payments of overdue and current premiums (with no amount specified) were not received "WITHIN TEN DAYS," the policy "will be cancelled as of the effective date of lapse," identified as "11-15-79". The later written notices referred to cancellation as having occurred on November 15, 1979. None of the notices complied with the requirement of section 515.80 that the insured be notified of the amount due and the amount necessary to pay the customary short rates. None of the notices provided that Bonnes would have "thirty days after service of such notice" within which to pay.

Guardian had the burden of proving effective cancellation; the notice was required to be given in strict compliance with the statute. *Farmers Insurance Group v. Merryweather,* 214 N.W.2d 184, 189–91 (Iowa 1974). Because the cancellation notice required by section 515.80 was not given to Bonnes Trucking, we would not need to reach the question whether Guardian was also required to serve notice upon all members covered by the group policy. On that issue, however, I disagree with the majority's interpretation that service of the required notice "upon the insured" means service upon all employees or group members.

First, Bonnes Trucking was certainly "the insured" to the extent that it had agreed to provide coverage for its employees and contributing dependents and undertook to perform that obligation by purchasing the Guardian policy. Bonnes Trucking was the insured because when Guardian paid covered medical or other expenses of

the group members, Bonnes Trucking did not have to.

Secondly, a reading of section 515.80 and the related sections 515.81 to 515.84 which follow suggests quite clearly that the required notice is to be directed to that person —"the insured"—who has been paying premiums, who now must pay the overdue premium to avoid cancellation, and who can be held liable for unpaid premiums. The typical group member would not be able to comply with the notice by paying the entire overdue group premium necessary to keep the policy in force. The typical group member would be unable, without considerable analysis of records beyond his control, to determine the accuracy of the information contained in the notice. The typical group member could not readily determine if the premium referred to in the notice had thereafter been paid by the employer within the grace period provided for in the statutory notice of cancellation. Neither would the group member be liable to the insurer for payment of all or a short-rate portion of the overdue premium.

To ascertain legislative intent we may consider the language used in the statute and the objects sought to be accomplished, seeking a sensible, workable, practical and logical construction. *Hansen v. State,* 298 N.W.2d 263, 265–66 (Iowa 1980); *Janson v. Fulton,* 162 N.W.2d 438, 443 (Iowa 1968). It is presumed that a just and reasonable result is intended. Iowa Code § 4.4(3) (1983). Inconvenience or absurdity should be avoided. *Quinn v. First National Bank,* 200 Iowa 1384, 1386–87, 206 N.W. 271, 272 (1925). Applying these established principles of statutory interpretation, I believe the expressed intent of section 515.80 is to require that the specified notice be given only to the party with whom the insurer directly contracts and from whom the insurer can reasonably expect to receive the premium. Had the legislature intended that all group members be given notice, a different form and content of notice for those persons would certainly have been specified either in Iowa Code chapter 509 or in Iowa Code chapter 515.

Consequently, I concur in affirming the judgment against Guardian not because Guardian failed to serve the Freemans but rather because it did not serve an effective cancellation notice upon Bonnes Trucking.